IN RE SEAN H. ET AL.*
(9096)

O'CONNELL, LAVERY and CRETELLA, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 29, 1990—decision released February 19, 1991

*David B. Rozwaski,* for the appellant (respondent).

*Linda Pearce Prestley,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman* and *Mary-Anne Ziewacz Mulholland,* assistant attorneys general, for the appellee (petitioner).

*Melissa A. Buckley,* for the minor children.

LAVERY, J. This is an appeal from the judgment of the trial court terminating the parental rights of the respondent father. The respondent claims that the trial court was incorrect (1) in admitting into evidence hearsay statements made by the respondent's deceased ex-wife to her attorney and (2) in concluding that the respondent's parental rights should be terminated pursuant to General Statutes §§ 17-43a (b) (3) and 45-61f (f) (2) even though the respondent was not the legal guardian or custodian of the minor children at the time. We disagree and affirm the judgment of the trial court.

The respondent and Amma H. intermarried on May 11, 1976. They had five children: Sean, born June 3, 1976; Joshua, born March 16, 1979; Samuel,

born March 29, 1981; Melissa, born December 3, 1982; and Rachel, born August 7, 1984. The marriage deteriorated and Amma commenced an action for dissolution on the grounds of irretrievable breakdown, claiming that the respondent physically abused her and the children, did not support them and had a chronic alcohol and drug problem. On August 31, 1987, Amma was granted a dissolution and full custody of the children with limited rights of supervised visitation granted to the respondent.

On September 9, 1987, Amma brought four of her children to the Chapel Square Mall in New Haven to buy shoes for school. The fifth child, Sean, was in inpatient psychiatric care at the time, due to acute psychological problems stemming from physical abuse inflicted by the respondent. The respondent accompanied Amma and Ricky Lewis, a family friend who drove them to the mall in his pickup truck.

After buying the shoes, Amma, the respondent and the children returned to Lewis' pickup truck. Joshua, Samuel and Melissa sat in the bed of the pickup truck and Rachel, the youngest child, sat in the cab of the truck, sharing the passenger seat with her mother. As the older children watched through an open window separating the bed of the truck from the cab of the truck, their parents had a brief argument after which the respondent began repeatedly stabbing Amma in the head, torso and arms. At least one of the children's pants and Melissa's mouth were spattered with their mother's blood. When Lewis attempted to come to Amma's aid, he became a target of the attack. He was pursued by the respondent down a street, and was stabbed repeatedly. The respondent then returned to the truck and continued to stab Amma, leaving two knives embedded in her skull. The attack on Lewis left him grievously injured. The attack on Amma resulted in her death.

Witnesses to the attack ushered the four children from the truck into the mall. Security guards on the scene took the respondent into custody after he followed Lewis into the mall and continued to threaten him. That night, the children were placed in emergency foster care by the department of children and youth services (DCYS).

On September 11, 1987, the petitioner, DCYS, filed ex parte neglect petitions and requests for orders of temporary custody. These petitions were based, in part, on the fact that the four younger children had witnessed the lethal attack on their mother and Lewis, and, in part, on the fact that at the time of the attack, the eldest child, Sean, was hospitalized at the children's psychiatric inpatient service due to emotional trauma resulting from earlier incidents of abuse by the respondent.

On October 22, 1987, the petitioner withdrew the prior petitions and filed coterminous petitions seeking an adjudication of neglect and termination of the respondent's parental rights pursuant to General Statutes §§ 17-43a and 45-61f. The basis of the termination petitions was that the five minor children had been denied, by reason of an act or acts of commission or omission, the care, guidance or control necessary for their physical, educational, moral or emotional well-being.[1]

---

[1] The petitioner also asserted that circumstances were such that a waiver of the one year waiting requirement was in the best interests of each child. General Statutes § 17-43a provides in relevant part: "(b) The superior court upon hearing and notice, as provided in sections 45-61d and 45-61f, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) the child has been abandoned by the parent in the sense

After a trial held over sixteen days in 1988 and 1989, the trial court found by clear and convincing evidence that the respondent had committed acts of spousal abuse and homicide and that as a result of those acts, each of the children had been denied the care, guidance and control necessary for their emotional, physical, educational, moral and emotional well-being. The court held that it was, therefore, in the best interests of the children to terminate the respondent's parental rights and to waive the one year statutory waiting period. The respondent seeks our review of that decision.

## I

The respondent first claims that the court should not have admitted Amma's hearsay statements into evidence through the testimony of Robin Murphy, her

that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child.

"(c) The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child."

attorney in the earlier divorce proceeding. The appellant asserts that Amma's statements to her attorney, detailing the past incidents of abuse perpetrated by the respondent, were inadmissible hearsay not subject to any recognized hearsay exception. In the alternative, the respondent argues that the testimony was a violation of the attorney-client privilege and should have been excluded on those grounds. We disagree and find that the statements were properly admitted under the residual hearsay exception.

The facts relevant to this claim follow. Murphy represented Amma in the dissolution, contempt and restraining order proceedings. During the hearings on the DCYS petitions, Murphy testified on March 18 and on April 6 and 7, 1988. Her testimony was that Amma told her that the respondent had regularly threatened, battered and sexually assaulted her; that he had beaten Sean with a belt leaving bruises on his face, arms and legs; that he had violated a restraining order twice; that he had abused alcohol and drugs and did not provide for the children. The respondent objected to this testimony at the time it was adduced claiming only that it was hearsay not subject to any recognized exception. His objections were overruled and the respondent took an exception. The respondent's request for a continuing objection was specifically denied by the trial judge. Upon review of the transcripts, it is clear to this court that the modicum of hearsay testimony objected to and properly preserved at trial for our review lies squarely within the residual catchall exception to the hearsay rule adopted by our Supreme Court.

"Though generally inadmissible, hearsay may be admitted if there is a sufficient probability that the statement is reliable and trustworthy, if the evidence contained in the statement is necessary to the resolution of the case, and if the trial court concludes that admitting the statement is in the interests of jus-

tice. . . . Some types of admissible hearsay occur frequently enough that certain defined exceptions to the general rule of inadmissibility have come to be recognized." (Citations omitted.) *State* v. *Stepney,* 191 Conn. 233, 249–50, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). In cases where the challenged hearsay testimony does not fall into one of these recognized exceptions to the hearsay rule, we must focus our analysis on two issues: "(1) whether there was a reasonable necessity for the admission of the statement, and (2) whether the statement was supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." *State* v. *Sharpe,* 195 Conn. 651, 664, 491 A.2d 345 (1985); see also *State* v. *Erhardt,* 17 Conn. App. 359, 368, 553 A.2d 188 (1989).

The necessity requirement is satisfied when facts necessary to the just resolution of the case contained in the hearsay statements may be lost due to the death or unavailability of the declarant or because the assertion is of such a nature that evidence of the same value cannot be otherwise obtained. *State* v. *Sharpe,* supra, 665; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. & 1990 Sup.) § 11.25.

The trustworthiness component is met when the factual circumstances are such that there is an adequate basis to assure the court that the statement meets the same qualitative standards for reliability and trustworthiness as statements admitted under otherwise established exceptions to the hearsay rule. *State* v. *Sharpe,* supra, 664; *State* v. *Acquin,* 187 Conn. 647, 680, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); see also Fed. R. Evid. 803 (24) and 804 (b) (5).

This assurance of trustworthiness may be found in any factual circumstances where a " 'sincere and accurate statement would naturally be uttered, and no plan of falsification be formed.' Such a statement is considered sufficiently trustworthy to be admissible despite the inability to cross-examine the declarant in the traditional sense." *State* v. *Sharpe,* supra, 665.

The statements testified to by Murphy were made by Amma in the context of their attorney-client relationship. Statements made in the confines of the attorney-client relationship have a particular degree of reliability and trustworthiness. The client is presumed to be looking after her own interest by giving full and truthful information to her attorney. In this case, the great bulk of the statements made to the attorney were also made by affidavit and testified to at least three times in court and cross-examined twice and, thus, may be considered reliable despite the lack of opportunity to cross-examine the declarant during this hearing.

The witness was unavailable in that she was deceased. The testimony was material, relevant and probative. The admission of all material, relevant and probative evidence, if trustworthy and reliable, was admissible in the interests of justice for a full and fair hearing.

At the hearing on April 6, 1988, the court found (1) that the declarant was deceased, (2) that the declarant would have been a competent witness at the time of the hearing, (3) that the declarant made the statements before the matter in controversy, (4) that the declarant had no interest to misrepresent. Accordingly, the statements were properly admitted under the catch-all residual exception to the hearsay rule.

The respondent raises an alternate objection to this testimony based on attorney-client privilege. By doing so, he seeks to assert a privilege that he does not hold.

The policy behind protecting attorney-client confidentiality is designed to encourage clients to make a full disclosure of facts to their counsel. *Goddard* v. *Gardner*, 28 Conn. 172, 174 (1859). Clients will be encouraged to do so only if they alone remain the masters of those secrets that they share with their counsel. The privilege is therefore reserved for those whose interests it is designed to protect and not adverse parties or the general population. To extend the protection beyond those whose interests it was conceived to protect would accomplish only the suppression of relevant evidence without promoting the purpose of the privilege. It is therefore well settled that the client alone is the holder of the privilege. C. McCormick, Evidence (3d Ed.) § 92.

This axiom leads us to agree with McCormick in concluding that "if an asserted privilege is erroneously sustained, the aggrieved party may of course complain on appeal of the exclusion of the testimony, the erroneous denial of the privilege [however] can only be complained of by the client whose privilege has been infringed. This opens the door to appellate review by the *client* if he is also a *party* and suffers adverse judgment. If he is not a party, the losing party in the cause, by the better view is without recourse." (Emphasis added.) Id. Further, it is absurd to think that the law would give standing to the respondent to assert the attorney-client privilege because it was his homicidal act that prevented Amma from either asserting the privilege or testifying herself.

II

The respondent's second claim is that the statutory basis for the petitions, "the acts of commission or omission" ground contained in General Statutes §§ 45-61f (f) (2) and 17-43a (b) (3) is not applicable to this case because the respondent was not the custodial parent at the time he killed Amma in the presence of

the children. Further, the respondent asserts that he never seriously abused the four younger children. We find no merit to these claims because the plain language of the statutes and their legislative history are devoid of any support for the respondent's position that the acts of commission or omission ground is applicable only against a custodial parent.

The language of those statutes is identical to that used in the petitions and provides that the court may approve the petitions terminating the parental rights "if it finds, upon clear and convincing evidence that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent . . . the *child* has been *denied,* by *reason* of an *act* or acts of *parental commission or omission,* the care, guidance or *control* necessary for his *physical, educational, moral* or *emotional well-being.* Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights . . . ." (Emphasis added.)

There is nothing in this clear statutory language that limits the acts of commission or omission to the serious physical injury of a child, rather than the serious emotional injury of a child. The language regarding prima facie evidence shifts the burden from the petitioner to the parent to show why a child with clear evidence of physical injury that is unexplained should not be permanently removed from that parent's care. The language does not limit the grounds to acts resulting in physical injury.

The respondent cites a Superior Court decision, *In re Luke G.,* 40 Conn. Sup. 316, 498 A.2d 1054 (1985), to support his position that the statutes on commission and omission can be invoked only against a custodial parent. *Luke* involved a termination petition brought

by a custodial parent against her ex-husband so that her new husband could adopt the children. The father had been denied visitation with the children by court order for eighteen months and his attempts to contact the children by telephone and through the mail had been frustrated and sabotaged by the mother and the step-father. The mother then alleged, through the introduction of testimony, that the father was an irresponsible parent.

The factual setting in *Luke* is clearly distinguishable from the case before us. The defendant father in *Luke* never presented any threat to the physical and emotional safety of his children. In *In re Luke G.*, supra, 324, the court stated that "[t]his ground [acts of commission or omission] is clearly inapplicable where a custodial parent seeks to terminate the rights of a noncustodial parent . . . ." In this case, the petitioner is the state (DCYS) and not a custodial parent.

The respondent stabbed Amma to death in full view of four of his children, leaving the children homeless, with no caregiver and with permanent emotional injury. In addition, the respondent had emotionally and physically abused his child Sean and his wife, Amma, in front of the other children over a long period of time. This resulted in Sean's placement in psychiatric inpatient treatment and contributed to the emotional injury of the other four children.

In a thorough and thoughtful memorandum of decision, the trial court correctly applied the statutes to the evidence admitted. The trial court summed up its determination with the following remarks taken from *In re Juvenile Appeal (84-6)*, 2 Conn. App. 705, 712, 483 A.2d 1101 (1984), cert. denied, 195 Conn. 801, 487 A.2d 564 (1985). "In striking at the heart of the family, the respondent demonstrated total disregard for the impact of his actions upon the emotional well-being of his children."

We conclude that the statutory language "acts of commission and omission" applies to custodial and noncustodial parents alike and thus the respondent's claim has no legal basis.

The judgment is affirmed.

In this opinion the other judges concurred.