[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This sad and unfortunate case concerns the interests of eight-year-old Nyhisa L., a minor child whose date of birth is October 11, 1988. The Department of Children and Families (DCF) filed a petition to terminate parental rights in this matter at the Superior Court for Juvenile Matters in Montville on October 27, 1995. The case was subsequently transferred to this venue for trial. CT Page 6807
The child's biological mother, Hope B., was named as respondent in the petition. Nyhisa's father is unknown.[1]
Pursuant to the applicable subsections of C.G.S. § 17a-112, the petitioner alleged three statutory grounds for termination of the respondent's parental rights: abandonment; failure to rehabilitate; and parental acts of commission or omission which denied the child the care, guidance or control necessary for her physical, educational, moral or emotional well being.
PROCEDURE HISTORY
The petitioner assumed Nyhisa's custody pursuant to a 96-hour administrative hold on September 27, 1993, and received an ex parte order of temporary custody of the child from the Superior Court for Juvenile Matters in Montville two days later. This OTC was continued by that court on diverse dates until December 22, 1993. On that date, Hope B. admitted at a hearing that her home could not provide the care which Nyhisa's physical, emotional or mental condition required. The Montville court adjudicated the child uncared for and committed her to DCF custody for a period not to exceed 18 months. That commitment was subsequently extended by the court on July 25, 1995 for an additional 18-month period. As noted above, DCF filed the termination petition on October 27, 1995.
Trial in this matter commenced on November 7, 1996 at the Child Protection Session in Middletown. It was thereafter heard on November 8, 1996 and November 19, 1996, when the case concluded. The petitioner, the respondent, and the minor child were each represented by their respective counsel throughout the proceeding. The respondent was present in court on the first two days of trial, but did not attend the hearing on November 19. The court had not been requested to excuse her appearance prior to that date, and Hope B.'s counsel represented that he had informed his client that her presence was not necessary. The hearing on November 19 dealt primarily with the issue of Nyhisa's paternity, which is discussed, supra, in Footnote 1. (Evidence and testimony in the case in chief had concluded on November 8th). Counsel for the respondent stipulated on the record that he waived his client's attendance, and the hearing proceeded without Hope B.'s presence.
During trial, the petitioner entered 15 documents into evidence, and introduced the testimony of the following CT Page 6808 witnesses:
1. David B., Nyhisa's foster father;
2. Natalie Racine, DCF social worker;
3. Nancy Randall, court-appointed psychologist;
4. Jeanne Antisdel, M.A., the child's therapist;
5. Ursula Cox, DCF social worker.
Counsel for the respondent also called Ursula Cox as a witness during his presentation, but did not offer any other evidence or testimony. Hope B. did not testify at trial, although she requested and was permitted to address the court after the conclusion of evidence and testimony on November 8th. Counsel for the minor child participated fully in the trial, but did not offer evidence or testimony.
FACTUAL FINDINGS
Hope B. contacted DCF to request that agency's assistance on September 24, 1993. The respondent related then that she had been on a two-day "crack binge" and wanted to enter the Boneski Treatment Center in Norwich for substance abuse therapy. She indicated that she wished to voluntarily place Nyhisa in DCF foster care during the period that she would be in residential treatment. (Petitioner's Exhibit 1). Melissa Russell, a DCF social worker, went to the respondent's address on that date, but found no one there. Ms. Russell returned to Hope B.'s home on September 27th, and spoke with both the respondent and Nyhisa. The respondent indicated that she would be entering Boneski on October 14, and agreed to cooperate with DCF. On September 28, DCF was contacted by the mother's boyfriend, who indicated that the respondent's whereabouts were unknown. He reported that Hope B. had left to go shopping the day before and had not returned. (Petitioner's Exhibit 1, Page 3). DCF social worker Deborah Taylor went to the home, and after determining that the boyfriend could not care for the child due to his work schedule, assumed custody of the child under an administrative "96-hour hold." The petitioner applied for and received an ex parte order of temporary custody from the juvenile matters court in Montville on September 29, 1993. Nyhisa was placed in the foster home of Mr. and Mrs. David B., where she remained continuously through the CT Page 6809 date when this trial started. The respondent was located by the New London Police on September 30, 1993, and was arrested for possession of drug paraphernalia (a crack cocaine pipe with residue). (Petitioner's Exhibit 7). Mother appeared to be "under the influence" when she was arrested, and admitted to police that she had been smoking crack for the previous four days, and had last used the drug an hour before she was taken into custody. (Petitioner's Exhibit 7). The police, concerned about Hope B.'s ability to care for her daughter, filed a report of suspected child abuse or neglect with the petitioner. (Petitioner's Exhibit 7).
When Nyhisa was committed to the petitioner's care and custody of December 22, 1993, the respondent agreed to various "expectations" which were approved by the court in Montville. (Petitioner's Exhibit 14). The mother agreed, inter alia, to keep all appointments set by or with DCF, visit Nyhisa as often as DCF permitted, participate in drug/alcohol counseling, refrain from substance abuse, and avoid further involvement with the criminal justice system. The expectation form, which was signed at court by both Hope B. and her counsel, contained the following notice:
 "If you fulfill the court's expectations, you will improve your chances of regaining or keeping guardianship of your child permanently. Failure to achieve these goals will increase the chance that a petition may be filed to terminate your parental rights permanently so that your child may be placed in adoption. If you need help in reaching any of these expectations, contact your lawyer and/or DCYS worker." (Petitioner's Exhibit 14).
The court finds, based on all of the evidence and testimony adduced at trial, that despite the support and encouragement of the child's foster parents, DCF and a number of service providers, Hope B. was unsuccessful in her efforts to meet these expectations and achieve rehabilitation.
David B., the foster father, testified that both he and his wife encouraged Hope B. to visit Nyhisa and take an active interest in the child. The foster parents afforded the respondent extensive access to their home, even to the point of hosting the mother on two separate Christmases. Despite this, the mother's visits were sporadic. CT Page 6810
Hope B. did not visit her daughter from December 10, 1993 until June 21, 1994. (Petitioner's Exhibit 2). She called Nyhisa or the foster parents approximately 12 times during this period. On May 5, 1994, the mother was arrested again by New London Police, on the charge of possession of narcotics. (Petitioner's Exhibit 5). The respondent was subsequently incarcerated at Niantic Prison, where the child visited her on June 21, 1994. Nyhisa told her mother to "stop using drugs," during this contact. (Petitioner's Exhibit 2, Page 2). Although a second visit at Niantic was scheduled at Niantic, it did not take place because the respondent had been released from correctional custody to an in-patient substance abuse treatment program at Boneski. The mother successfully completed a 30-day substance abuse program there and was released from Boneski on July 25, 1994. However, she did not visit with the child again until November 6, 1994, and she did not speak with the child on the telephone from June 14, 1994, until October 13, 1994. (Petitioner's Exhibit 2, Page 2). These periods of no-contact had a damaging impact upon the child. During the time when Hope B. dropped out of her life, Nyhisa worried that her mother was dead, or would die because of her drug use. She also fretted that her biological mother no longer loved her. (Testimony of David B.) David B. testified that the child would express relief when she learned at various times that the respondent had been incarcerated. David B.'s wife is a, correctional officer at Niantic, and the child reasoned that her foster mother would protect her biological mother when the latter was in custody.
DCF had considered filing for termination in 1994, but delayed doing so in the hope that the respondent's rehabilitative efforts would improve. In February of 1995, DCF social worker Natalie Racine met with the mother. The worker admonished the respondent about the damaging impact which her lengthy absences had on the child. DCF records and the foster father's testimony established that the respondent's efforts at calling and visiting her daughter improved significantly during the five months which transpired between November 1994. and the end of April 1995. (Petitioner's Exhibit 2, Page 3). The respondent telephoned the child twice a week and visited at the foster home every other weekend. DCF made arrangements around this time to enroll Hope B. in a parenting class, and to provide her with visitation assistance through a program offered by Child and Family Services.
The improved parent-child contact terminated abruptly around CT Page 6811 May of 1995. The respondent called Nyhisa on the telephone on April 28th and spoke to her for just one minute. She missed her scheduled visit with the child on April 30th, and failed to call the child as planned on May 2nd. (Petitioner's Exhibit 2, Page 3). Once again, the respondent disappeared. Neither DCF, nor the child, knew where the mother was, and Hope B. failed to attend the parenting classes and visitation program which petitioner had arranged for her.
Hope. B. "surfaced" in July 1995 when a social worker from Niantic Prison contacted DCF to indicate that the mother was incarcerated again and wanted to speak with Nyhisa's foster mother. (Petitioner's Exhibit 2, Page 3). Department of Public Safety records introduced into evidence during this trial indicated that Hope B. was arrested by the New London Police for yet another narcotics possession charge on May 5, 1995 (Petitioner's Exhibit 5). It is unclear to the court how long the mother was incarcerated on this charge. Petitioner's Exhibit 5 indicates that Hope B. was subsequently convicted for this offense on January 19, 1996, but other evidence reveals that the respondent was released from pre-trial confinement some time prior to that date. The mother began calling and writing her daughter in August, 1995, and visited with her again on December 19, 1995. Prior to that date, the respondent had not visited in person with her daughter since April of 1995. As noted above, DCF decided to start TPR proceedings in October, 1995.
The respondent admitted to David B., the foster father, that her protracted absences from the Nyhisa's life were due either to her incarcerations, or her recurrent substance abuse "lapses." The foster father testified that while the child understands that her mother has a drug problem, Hope's B.'s substance abuse is "disrupting" Nyhisa's life.
All of the evidence introduced at trial indicates that the respondent made little headway towards conquering her drug abuse during the period from September 1993, until the TPR petition was filed in October, 1995. One document introduced by petitioner (Petitioner's Exhibit 11,, Ongoing Individual Treatment Plan, 10-1-95, Page 3 of 9) contains the following summary concerning the mother's substance abuse treatment and other service referrals:
 "Boneski Treatment Center-In patient substance abuse treatment-mother discharged 11-94. Counseling-mother CT Page 6812 attended support group on Tuesday evenings for substance abuse. Altruism House-half-way house for substance abusers. Mother did not follow through. SCADD-mother admitted herself for 10-day detox program-completed. Care Clinic-individual counseling and after care for substance abuse. Visitation Center-DCF referred mother. Mother refused services. Child and Family Agency-parent education-mother to self refer-but did not follow through. Thames River Family Program-supported living-mother did not follow through. New Life Center-supported living for substance abusers. Mother did not follow through.
The respondent's failure to participate in intensive, long-term in-patient drug treatment ultimately undermined any real hope that she could successfully rehabilitate. During the two years which elapsed from the date of the OTC until the date when DCF filed the TPR paperwork, Hope B. was arrested four times. Three of those arrests resulted in felony convictions for possession of narcotics. Nothing, including probation, imprisonment, and the threat that she would lose her child, could compel the mother to defeat the demons of her chemical dependency.
Nyhisa was the unfortunate beneficiary of Hope B.'s chronic substance abuse. The child missed her mother when she dropped out of sight or failed to visit, and was frequently concerned that her mother no longer loved her, or was dead. A DCF record introduced at trial eloquently summarized the child's feelings when she told her foster father in May of 1995:
 "This is going to be like last year. She's not calling, she's doing drugs, not seeing me. I'll have no mommy." (Petitioner's Exhibit 2, Page 3).
 ADJUDICATION (Based on facts as of October 27, 1995)
1. Failure to Rehabilitate: C.G.S. § 17a-112 (b)(2) defines this non-consensual ground for termination of parental rights. It applies in those cases where:
 "the parents of a child who has been found by the superior court to have been neglected or uncared for have failed to achieve such degree of personal rehabilitation as would encourage the belief that within CT Page 6813 a reasonable time, considering the ages and needs of the child, they could assume a responsible position in the life of the child.
Per C.G.S. § 17a-112, this failure to rehabilitate must have occurred "over an extended period of time which . . . shall not be less than one year" before the date when the TPR petition was filed or last amended. Although there is no statutory definition of the term "personal rehabilitation," case law in Connecticut instructs that it means "the restoration of a parent to his or her former constructive and useful role as a parent."In re Juvenile Appeal, 1 Conn. App. 463, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). See also: In reMigdalia M., 6 Conn. App. 194, 203, (1986).
During the period of time from September, 1993 until October, 1995, Hope B. continued to abuse cocaine and other drugs, and largely failed to get the treatment she needed to overcome her substance problems and resume Nyhisa's custody. Despite sincere offers of treatment and assistance by DCF, the foster parents and service providers, the respondent did not comply with court expectations that she visit the child as often as DCF permitted, refrain from substance abuse, avoid further involvement with; the criminal justice system, and get the counseling which she needed. As a result of her illegal drug usage, the mother was consistently unable to care for her daughter, who has now been in foster care placement for the past three years. Hope B's relapses and imprisonment for drug-related offenses also caused her to drop out of the child's life for extended periods of time. This resulted in emotional harm to the child, who now receives ongoing psychotherapy.
Based on all of the forgoing, the court finds that the petitioner has proven by clear and convincing evidence that Hope B. has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in Nyhisa's life. The court also finds that the petitioner established by clear and convincing evidence that this ground for termination existed for not less than one year prior to October 27, 1995, and that DCF made reasonable efforts to reunify the child with her parent.
2. Abandonment: C.G.S. § 17a-112 (b)(1) provides that a child is abandoned if his or her parent has "failed to maintain a CT Page 6814 reasonable degree of interest, concern, or responsibility" for the child's welfare. (See also: In re Juvenile Appeal, 183 Conn. 11,438 A.2d 801 (1981). As with the other non-consensual statutory grounds for termination, the alleged abandonment must have occurred for an extended period of time, not less than one year. The question of whether or not abandonment has occurred in a particular case focuses on the conduct of the parent. In reRayna M., 13 Conn. App. 23, 534 A.2d 897 (1987).
As noted above, the respondent's visits and telephone contacts with the child were fairly consistent between November, 1994 and May, 1995. There was also evidence that the biological mother brought gifts to the child in the foster home at various times.(Testimony of David B.) Given these facts, the court finds that the petitioner has failed to prove by clear and convincing evidence that Hope B. abandoned Nyhisa for a period of not less than one year prior to the filing of the termination petition in October, 1995. Accordingly, that count of the petition is herebydismissed.
3. Acts of omission or commission: C.G.S. § 17a-112 (b) (3) authorizes the court to grant a termination under this statute "where specific acts of parental commission or omission have caused serious physical or emotional injury to the child." Inre Kezia M., 33 Conn. App. 12, 19, 632 A.2d 1122 (1993); In reTheresa S., 196 Conn. 18, 25-27. 491 A.2d 355 (1985); In re KellyS., 29 Conn. App. 600, 614, 616 A.2d 1161 (1992); In re Sean H.,24 Conn. App. 135, 144-45, 586 A.2d 1171, cert. denied, 218 Conn. 904,588 A.2d 1078. (1991).
Most of the evidence and testimony introduced during the adjudicatory phase of I this trial dealt with Hope B.'s efforts towards parental rehabilitation and reunification after Nyhisa's custody was assumed by DCF. There was no evidence that the respondent ever inflicted serious physical or emotional injury upon the child. Although the mother's drug relapses and disappearances caused emotional harm to the child, the court finds that this did not constitute the type of serious physical or emotional injury referred to in C.G.S. § 17a-112 (b)(3). Connecticut case law is clear that a child cannot have been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well being by reason of parental acts while the child is in foster care. In re Kezia M.,
supra, 20; In re Kelly S., supra; In re Shannon S., 41 Conn. Sup. 145,562 A.2d 79, affirmed, 19 Conn. App. 20, 560 A.2d 993
CT Page 6815 (1989). Based on the forgoing, the court finds that petitioner did not prove this ground for termination. Accordingly, that count of the petition. is also dismissed.
 DISPOSITION (Based on facts through the date of trial)
Contested termination of parental rights trials consist of two distinct phases: the adjudicatory phase, and the dispositional phase. Connecticut Practice Book 1042.1, 1043.1 and 1049.1.. Although the court may hear evidence as to both adjudication and disposition during the course of the same trial, it must first determine that one of the statutory grounds alleged for termination has been proven before it considers the issue of disposition. Connecticut Practice Book 1042.1(4); In re ValerieD., 223 Conn. 492, 511, 613 A.2d 748 (1992).
Having found in this case that the petitioner met its burden of proof with respect to one of the grounds alleged for termination, the court now addresses the matter of disposition.
Nyhisa's situation has been adversely impacted by recent developments concerning her foster care placement. David B. testified at trial that he and his wife decided that they cannot adopt the child. Nyhisa, who has lived in that foster home for the past three years, was understandably hurt and confused by the news that she will not remain with these foster parents. DCF has identified another family which is willing to adopt the child if a TPR is granted. Nyhisa had her first meeting with those prospective adoptive parents prior to the commencement of this trial.
During trial, the court also received other dispositional evidence concerning both the current parent-child relationship, and the respondent's efforts at substance abuse treatment since the TPR action commenced. Hope B. suffered a relapse in March of 1996, when she smoked crack and consumed alcohol. (Petitioner's Exhibit 13, Page 2). The mother thereafter attended individual substance abuse counseling at a program known as SCADD on four dates in April and May, 1996. She was thereafter referred by her probation officer to group counseling for substance abuse which she attended for six weeks. David B. testified that the respondent missed six weeks of visits with Nyhisa during the summer of 1996.
Nancy Randall, a court-appointed psychologist, conducted an CT Page 6816 evaluation of Hope B. and Nyhisa during February 1996. Her report of that assessment is dated February 26, 1996, and was entered into evidence as Petitioner's Exhibit 4. Dr. Randall noted therein:
 "Nyhisa is in need of a permanent home. She appears to have the skills necessary to form attachments and to participate in a family. She is at an age where it should be possible to find an adoptive home without difficulty. She has already experienced abandonments and inconsistencies by her mother and it is important for her to have the security of a permanent home to be able to work through these hurts in a healthy manner. The longer that she remains without a permanent home, the more significant the risk will be that her behavioral problems will increase and her psychological health will suffer. The prognosis for her return to her mother's care is poor. It would be a disservice to Nyhisa to force her to wait longer, only to be further disappointed when her mother is still unable to provide the home she needs." (Petitioner's Exhibit 4, Pages 10-11).
Although noting in her report that Hope B. had recently been involved is substance abuse treatment, Dr. Randall opined that it was unlikely that the mother "will be able to rehabilitate to the extent necessary to resume parental care of Nyhisa within a reasonable length of time." (Petitioner's Exhibit 4, Page 10).
Jeanne Antisdel, who has been Nyhisa's psychotherapist since February 1994, testified that the child does not believe that her biological mother will ever take care of her. She recounted that the child had hoped that she would be able to live with David B. and his wife forever, and regarded her foster parents and foster siblings as her family. The child does not include the biological mother in her family constellation, and does not regard Hope B. as her mother.
Almost every witness who testified for the petitioner emphasized Nyhisa's need for permanency and grounding. David B., the foster parent, noted that the child has articulated her desire for closure, and her need to go to a "real family."
DCF advocates that Hope B.'s parental rights be terminated so that the child might be permanently placed in an adoptive home. The child's attorney, her current foster father, her therapist, CT Page 6817 and the court-appointed psychologist, all share that recommendation. The respondent contends that she has made progress in her rehabilitative efforts recently, and requests that she be given another chance to parent the child. There is no doubt that the mother, who herself was a neglected and abused child, loves Nyhisa.
But despite that affection, and despite ample time, assistance and encouragement, the mother has not been able to remediate her situation to the point where she could assume a responsible position in the child's life. There is nothing to indicate that she would be able to do so within a reasonable period of time in the future. The child has been in foster care for three years now, and is about to confront the uncertainty and upheaval of going to yet another placement. Given the time which has already elapsed, and Nyhisa's well-documented and pervasive need for a secure and loving home, it would be totally inappropriate to delay permanency planning for this child any longer.
Before this court may enter judgment, it is required to make the following findings of fact mandated by C.G.S. § 17a-122
(d):
1. Services offered: The respondent was offered numerous and appropriate rehabilitative services on a timely basis. These have included parenting classes, a visitation assistance program and referrals to a large number of out-patient and residential substance abuse treatment programs.
2. Reasonable efforts to reunite: DCF made reasonable efforts to reunite the child with her mother. The petitioner offered the respondent expansive visitation and the services referred to above, in concerted effort to promote reunification.
3. Court orders: No court orders were entered in this case. Court-approved expectations were set on December 22, 1993. (Petitioner's Exhibit 14). Although DCF provided services designed to facilitate achievement of the goals enumerated therein, those expectations were largely unfulfilled by the respondent.
4. Emotional ties: Nyhisa bonded with the members of the foster family with whom she resided for the past three years, and regards them as her family. Unfortunately, the foster parents CT Page 6818 have decided that they will not be able to adopt the child, and a new pre-adoptive foster home had been selected for Nyhisa by DCF around the time this trial commenced. The court does not have extensive information about Nyhisa's interaction with her prospective adoptive family. The child knows Hope B., and has a relationship with her. She does not regard her biological mother as her psychological parent, or as a caretaker.
5. Age of the child: Nyhisa L. is eight years old, her date of birth being October 11, 1988.
6. Efforts to adjust: Despite adequate time and assistance to do so, the respondent mother has failed to make significant and sustained efforts to adjust her circumstances, conduct and/or conditions so as to make it in the best interests of the child to return her to the parental home in the foreseeable future. Although the mother maintained contact with the child, there were extended periods of time when she was absent from the child's life. These lapses in contact, and respondent's overall inability to properly parent the child were the direct result of Hope B's continued substance abuse, illegal conduct, and failure to obtain appropriate drug treatment during the past three years.
7. Impediments to parent-child relationship: No unreasonable act or conduct of any agency or individual, and no adverse economic or other circumstance, prevented Hope B. from maintaining a meaningful relationship with the child.
JUDGMENT AND ORDERS
Having considered the seven factors enumerated above, and having found as proven one of the grounds alleged for the termination of respondent's parental rights, the court further finds as proven by clear and convincing evidence that it is in the best interests of Nyhisa L. that Hope B.'s parental rights be terminated, in order that said child may be freed for adoption. The child's age, the length of time that she has already spent in foster care, her need for a permanent home, and the biological mother's failure to achieve rehabilitation and reunification during the past three years, all demonstrate that such a disposition is imperative for the child's future happiness and well-being.
Accordingly, it is ORDERED that the parental rights of Hope B. are hereby terminated. It is further ordered that the CT Page 6819 Commissioner of the Department of Children and Families be appointed the statutory parent of said child, for the purpose of securing an adoptive home or other appropriate permanent placement for her. Said Commissioner shall file with this court, no later than 90 days following the date of this judgment, a written report on the progress achieved towards such permanent placement. If adoption has not been finalized by March 17, 1998, then said Commissioner is further ordered to file a Motion for review of Plan for Terminated Child, which shall be heard by the court no later than June 17, 1998.
Dated at Middletown, Connecticut this 17th day of December, 1996.
BY THE COURT
DYER, J.