MEMORANDUM OF DECISION
This case presents an application for the termination of the parental rights of Nicole Q. and John B., who are the biological parents of the minor child Jonathan Q. His great aunt and uncle filed this application in the Probate Court on December 21, 1995 pursuant to Connecticut General Statutes § 46b-714, et. seq. On mother's motion, the matter was transferred to the Superior Court on September 25, 1996. At the conclusion of the trial, the father, who is presently incarcerated, consented to the termination. Mother was not present, although represented by counsel and aware of the hearing. Jonathan is almost nine years old and has lived with his maternal great aunt and uncle for most of his life. The petitioners wish to adopt Jonathan if his parents' rights to him are terminated.
The court finds that the mother has appeared and has a court appointed attorney. The court further finds that the father has been served, had counsel appointed and appeared for the contested hearing. The court has jurisdiction in this matter and there is CT Page 8581 no pending action affecting custody of the child in any other court.
The court, having read the application for termination of parental rights, the probate court social study and its update and the various documents entered into evidence, and having heard the testimony of maternal great aunt and paternal grandmother, makes the following findings by clear and convincing evidence.
The father does not contest the termination of his rights. He consented to the termination, after review of the matter with his counsel, and filed a written consent with the court. The court finds his consent to have been voluntarily and knowingly made with the advice and assistance of competent counsel and with a full understanding of the consequences of his act. He fully supports the child's great aunt and uncle and their planned open adoption of Jonathan.
The mother, Nicole Q., is twenty-five years old and had a troubled history as an adolescent. There were eight referrals to the Department of Children and Families regarding the care she received by her mother. The referrals included physical and emotional neglect and risk of injury to a minor. She left home at age fifteen when she reported sexual abuse at the hands of her step father. She became heavily involved with drugs and alcohol and was only fifteen when Jonathan was born on October 21, 1988. The parents were unmarried but lived with each other off and on in the ensuing years in highly dysfunctional settings, as both are drug and alcohol addicted.
Olivia B., the child's great aunt, testified that she cared for Jonathan regularly when he was a newborn. When he was nine weeks old, Nicole asked her to take care of him full time, as she was not able to give him the care that he needed. Olivia went to her niece's house and retrieved the child, who except for a traumatic six month period a few years later, has in all these years known no other home.
Jonathan has been diagnosed with ADHD and is on medication for this condition and has been for many years. He considers his great aunt and uncle his parents and is closely bonded to them.
When Jonathan was about three years old, Nicole came with a new boy friend and on the pretext of taking her son on a day trip, removed him from her aunt's care. She and her boyfriend CT Page 8582 went to Tennessee and remained there with Jonathan and a younger sibling for six months. There was suspected child abuse reported by a pediatrician there. Jonathan was returned to his great aunt and uncle after various court orders and Olivia B. ultimately received custody of him and then pursuant to Probate court proceedings, guardianship of him.
Nicole has unfortunately continued her drug and alcohol abuse and was sentenced for drug convictions and incarcerated in 1995 and 1996. In February of 1995, an assessment was made whether Jonathan should have unsupervised visitation with his mother (Petitioner's Exhibit 2). At that time, the evaluator found that Jonathan was still traumatized by his mother, became angry and aggressive when she was present and was unwilling to leave his great aunt. He is extremely attached to his great aunt and bonded to both Olivia and her husband. No change from supervised visitation was found warranted at that time.
By all reports, Nicole's visits with Jonathan have been sporadic at best. At the time of the update of the Social Study, Petitioner's Exhibit 4, dated March 6, 1997, she had not seen Jonathan in more than a year. She has not exercised good judgment with this child. The two children born to her since Jonathan's birth are in the care of older relatives as well.
Jonathan's paternal grandmother testified that Nicole had had recent contact with her and had asked her to pick up the consent to termination forms at her criminal lawyer's office. Judy B. reported that Nicole has several criminal charges pending including arrest warrants for failure to appear on court dates in the criminal matters, that have not yet been served on her. Nicole signed the consent form, did not date or acknowledge it before a notary in Judy's house on September 9, 1997. (Petitioner's Exhibit 5). Under the circumstances, the court cannot accept her consent as valid but notes that it expresses her knowledge of the court proceedings concerning her oldest child. It is clear from her behavior that she has no expectations of providing a home for this child and at present her whereabouts and residence are unknown. While she did not appear to be using drugs on September 9, according to Judy B., she still abuses drugs and alcohol and has not rehabilitated herself.
ADJUDICATION
With respect to the statutory grounds for termination of CT Page 8583 parental rights, the court finds, by clear and convincing evidence, that as of December 21, 1995, this child had been abandoned by Nicole Q., his biological mother as she had not maintained a reasonable degree of interest, concern or responsibility for Jonathan. "A parent must maintain a reasonable degree of interest in the welfare of his or her child. `Maintain' implies a continuing reasonable degree of concern." In Re MichaelM., 29 Conn. App. 112, 614 A.2d 832 (1992) quoting In Re RaynaM., 3 Conn. App. 23, 37-38, 534 A.2d 897 (1987). The court also finds from the evidence and Nicole Q.'s removal of Jonathan from Olivia B.'s care that he had been denied, by reason of acts of parental ommission as well as commission, the care, guidance or control necessary for his physical, educational, moral and emotional well being as set forth in Connecticut General Statutes45a-717 (g)(2)(B). He suffered great emotional harm as a result of his removal and was traumatized by this event. In re Kelly s.,29 Conn. App. 600, 614, 616 A.2d 1161 (1992), In re Sean H.,24 Conn. App. 135, 144-145, 586 A.2d 1171, cert. denied,218 Conn. 904, 588 A.2d 1078 (1991). The court further finds such circumstances had existed for an extended period of time in excess of one year prior to the date of the filing of the application for termination of parental rights in the Bristol Probate Court.[2]
 REQUIRED FINDINGS
The court will make no findings regarding John B., the biological father of Jonathan as same are not required due to his consent to the termination of his parental rights. With respect to the mandatory factual findings required by Connecticut General Statutes § 45a-717 (I) concerning the mother, Nicole Q:
1) The timeliness, nature and extent of services offered, provided and made available to the parent and child by a child placing agency to facilitate the reunion of the parent with the child;
Since no such agency has been involved with this family, no such finding is required. Nonetheless, the court will find that Jonathan's great aunt has attended counseling with Nicole and Jonathan, she has made visitation with the child possible on a regular basis with the mother in which the mother has not regularly chosen to participate.
2) The terms of any applicable court order entered into and CT Page 8584 agreed upon by any individual or child placing agency and the parent and the extent to which all parties have fulfilled their obligations under such order;
In this case there were a number of Superior Court orders concerning Jonathan's great aunt and Nicole Q. (Petitioner's Exhibit 1). They shared joint custody of Jonathan for a period of time and joint counseling was ordered, which was carried out by Jonathan's great aunt who made many attempts to involve Nicole Q. actively in Jonathan's life. The court finds that the petitioners have fulfilled their obligations under these court orders and that Nicole Q. has not.
3) The feelings and emotional ties of the child with respect to the child's parents, any guardian of the child's person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties;
As previously noted, Jonathan considers his great aunt and uncle his parents and is strongly bonded to both of them. While he understands who his biological parents are, his primary bonding and emotional attachments lie elsewhere.
4) The age of the child;
Jonathan will be nine years old on October 21, 1997.
5) The efforts the parent has made to adjust such parent's circumstances, conduct or conditions to make it in the best interests of the child to return the child to the parent's home in the foreseeable future including but not limited to (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child. While both parents have in the past maintained some contact with their son, Nicole Q. has in the recent past been incarcerated. Her whereabouts are unknown and her problems with drug addiction continue unabated. The court finds that the mother has been unsuccessful in making any meaningful attempt to adjust her circumstances, conduct or condition to facilitate reunification. She has had no contact with Jonathan in over a year. CT Page 8585
(6) The extent to which a parent has been prevented from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstance of the parent. Neither parent has been in a position to regularly contribute financially to the care of their son, despite court orders for such support. Given their present circumstances, it is extremely unlikely that they will be able to contribute support for their son in the foreseeable future. Further, the maternal aunt and uncle have made every effort to permit Nicole Q. to have contact with Jonathan and to facilitate her ongoing relationship with him. Their caring and concerned efforts have not been sufficient to overcome the consequences of Nicole Q.'s drug-addicted and law-breaking life style.
DISPOSITION
For many years Jonathan's life has been in a state of flux. He needs the stability and consistency that are provided by his loving relationship with his great aunt and uncle and the stable home they have maintained for him. Based upon the foregoing findings, the court determines that it is Jonathan's best interest as of September 10, 1997 that a termination of parental rights enter with respect to his mother, Nicole Q, and his father, John B. and, accordingly, a termination of their parental rights is ordered. It is further ordered that Olivia and Victor B. are appointed the guardians of Jonathan's person in accordance with Connecticut General Statutes 45a-717(k) and also ordered that they shall file with this court no later than 90 days following the date of judgment a written report of efforts regarding a permanency plan for Jonathan and shall file further reports as are required by State and Federal law.
Barbara M. Quinn, Judge Child Protection Session