MEMORANDUM OF DECISION
On December 10, 1997, the Department of Children and Families, hereafter "DCF", filed a petition for the termination of the parental rights of AIberto A. to his daughter, Giselle A., who is now seven years and eight months old. Giselle's mother died on June 26, 1997, and Alberto A. is her only remaining biological parent. But more than two years prior to her mother's death, on March 17, 1995, Giselle had been placed in the care of her maternal aunt, now her foster mother, after Giselle made statements that her father had sexually abused her. Giselle was adjudicated a neglected child on August 11, 1995 and has remained committed to the care and custody of DCF since that time.
In the termination petition, DCF alleges that Giselle was previously adjudicated neglected and that her father has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, he could assume a responsible position in the life of the chiId. Also alleged is that Alberto A. has committed acts of omission and commission in that the child has been denied the care, guidance, or control necessary for her physical, educational, moral or emotional well being. The last allegation is that there no ongoing parent child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent child relationship would be detrimental to the best interest of the child. Connecticut General Statutes § 17a-112 (c)(3)(B), (C) and (D). Also pending was Alberto A.'s motion to transfer guardianship of Giselle to her maternal aunt, Maria P.
At the time of trial, Alberto A. was at the North Florida Evaluation and Treatment Center, after having been found not CT Page 12904 guilty of a crime committed in Florida by reason of insanity on April 19, 1998. He will remain in this facility for an indeterminate amount of time. Alberto is represented by counsel and a guardian ad litem, who both participated in the trial. Alberto participated in the proceedings in Connecticut by telephone link to the Florida facility in which he is housed. The foster mother intervened for dispositional purposes and her counsel attended the trial. The court heard the testimony of two DCF social workers, Dr. Carlos Salguero, a psychiatrist who evaluated Giselle, Ms. Barbara Ferraro, Alberto's therapist in Florida, and from Alberto A. himself. The court received eight exhibits. From the evidence, the court finds the following facts:
 A. FACTS
Both of Giselle's biological parents had psychiatric difficulties and substance abuse in their lives. Each was born in Puerto Rico and then came to live in the United States. They never married, but in 1988, the couple had their first child, a son, who resides with his paternal grandmother in Florida. Giselle's biological father, Alberto A., has an extensive psychiatric history and has required hospitalizations several times during his life. At the time of Giselle's' removal in 1995, he was hospitalized at Yale-New Haven Hospital for having homicidal and suicidal thoughts. At that time, he admitted to thinking of killing his daughter and cutting his own throat. At various times he has been diagnosed with Schizo-Affective Disorder and Paranoid Schizophrenia, Depression and cocaine and alcohol dependence. He has reported that he often hears voices commanding him to do certain things. His present therapist in Florida testified that he continues to hear voices and that, as a consequence, his medication has been increased, although his auditory hallucinations have not completely ceased. She stated that the Center's intake assessment on August 30, 1998 confirmed the psychiatric diagnoses previously listed. She also stated that he was not yet ready to be released to the community. When he was first placed in the facility, he was actively psychotic and paranoid. He has improved through the use of medication and the process of teaching him basic living skills has begun. She testified that the normal stay in the facility is at least eighteen months and that Alberto began his stay at the end of April, 1998. She acknowledged that he could not care for his daughter stating: "he is locked up in a forensic facility because of his psychiatric condition and knows that he could not care for the child." CT Page 12905
In early 1995, Alberto A. and Giselle's mother, Carmen P. were living together in a household in Connecticut together with Giselle. In March, 1995, Giselle disclosed to her aunt and mother that her father had hurt her in her vaginal area. In the next several weeks, given her age and limited verbal ability, officials were unable to confirm abuse. Nonetheless, Giselle, when she next saw her father, was afraid of him and spoke of the abuse. Two supervised visits after her placement in foster care demonstrated her continued fear and visitation was terminated by court order in 1995. A year later, she again described the sexual abuse by her father to the DFC investigations worker, Denise Lopez, and was able to demonstrate to Ms. Lopez that her father, whom she called "Berto", lay on top of her and inserted his penis in her vaginal and anal area.
Dr. Carlos Salguero evaluated Giselle on March 4, 1997 and April 8, 1997. He concluded that Giselle's rich and complex fantasy life, which included imaginary playmates to whom she regularly spoke, was not evidence of a thought disorder, but saw the "traumatic play as a means to cope with her feeling of vulnerability." He testified that she exhibited signs of Post Traumatic Stress Disorder. As to the sexual abuse, he concluded that "Giselle's reports of this incident are clear enough to know that she had been sexually abused." He also noted that it was important for her to remain with her aunt. He testified that in April, 1997, during a follow-up session, he questioned Giselle about the possibility of visiting with her father. In contradistinction to his first meeting with her, this time he felt "that she was quite anxious" and after he asked about her father, she became withdrawn, curled up into a fetal position and had to be held by her therapist. Dr. Salguero concluded not "only from her verbal, but also her non-verbal communications" that to continue to press her for an answer was not in her best interests. In his written report, he stated:
 "this child should not be questioned anymore about her father and the incidents that took place. Anytime anyone asks question of Giselle, it would be very traumatic and opens the wounds that are just beginning to heal. In addition, under no circumstances should this child be allowed to visit or made to visit her father. If she is forced to visit her father she will have a severe breakdown and severe psychological trauma which may be permanent."[2]
He testified that in his clinical opinion Giselle had been CT Page 12906 sexually abused.
The DCF social worker, Anna Garcia, testified that Giselle was bonded and attached to her foster mother and family. She stated that she saw a warm and loving relationship between Giselle and her aunt. The child, she testified, would sit by her aunt, hug her and declare that she loved her aunt. In her opinion, Giselle's aunt had a lot of love to give this child and had done much to provide her with her present stability. In the past three years, her aunt, Maria D., has taken her to her therapy session, made sure she has adequate medical care, and provided a supportive and loving home. Even Giselle's father testified that Maria P. had cared for her niece intermittently since she was a baby when he and Giselle's mother were still together. He stated that "they know her and have been taking care of her since she was born . . . they were always close to her." He argued that guardianship should be transferred to them and that he should not lose all rights to Giselle. The intervening aunt made the court aware that she was not in favor of an "open adoption."
 B. ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that as of December 10, 1997, Alberto N. had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of his child, he could assume a responsible position in her life. Connecticut General Statutes § 17a-112
(c)(3)(B). While he attended mental health treatment in Connecticut, his assessment results in 1998 in Florida reveal that he has not been able to deal with his significant mental health issues in order to be able to parent a child. Giselle was placed in foster care in March, 1995. More than three years have already passed since that date. She cannot wait longer until some future and indeterminate time for the rehabilitation of her father, a rehabilitation he has never been able to achieve in the past and is not likely to achieve in the near future. Even he admits he cannot care for her.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M. 6 Conn. App. 194,203, 504 A.2d 532 (1986). See also: In re Juvenile Appeal, CT Page 129071 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802,474 A.2d 1259 (1984). There is no doubt that Alberto will not be rehabilitated within the foreseeable future. The court finds, based on the clear and convincing evidence, this ground had existed for longer than one year prior to the filing of the termination petitions on December 10, 1997.
The court further finds, by clear and convincing evidence, that as of December 10, 1997, based on Alberto's molestation of his daughter that she had been denied, by reason of acts of parental omission as well as commission, the care, guidance or control necessary for her physical, educational, moral and emotional well being as set forth in Connecticut General Statutes § 17a-112 (c)(3)(C). The court concludes, from the evidence, that Alberto did sexually abuse Giselle. The full and ongoing extent of the permanent emotional harm inflicted on this vulnerable child by his behavior was unequivocally stated by Dr. Salguero. Even the mention of contact with her father is sufficient to cause Giselle to withdraw and become extremely anxious. In Re Kelly S., 29 Conn. App. 600, 614, 616 A.2d 1161
(1992), In Re Sean H., 24 Conn. App. 135, 144-145, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078 (1991). The court further finds such circumstances had existed for an extended period of time in excess of one year prior to the date of the filing of the petition for termination of parental rights.
The third ground alleged is that there is no ongoing parent-child relationship. "The question is whether they [the facts] substantiate a finding by clear and convincing evidence that no relationship ever existed between the parent and child, or that the relationship has terminated, without any future hope for its establishment or reestablishment." In re Migdalia M.,6 Conn. App. 194, 211, 504 A.2d 532 (1986); In re Juvenile Appeal (84-3),1 Conn. App. 463, 473 A.2d 795, cert. denied, 193 Conn. 802,474 A.2d 1259 (1984); In re Juvenile Appeal (Anonymous),177 Conn. 648, 670-671, 420 A.2d 875 (1979). Given the testimony of the DCF social worker, there was no relationship between Alberto and his daughter. While his visitation was terminated by court order, it is not in her best interest that the relationship be resumed. Indeed, Dr. Salguero believes that it would be actively harmful to this child, who does not wish to have a relationship with her father. Alberto has made no progress in dealing with his significant mental health issues in the years since Giselle's removal. It is his actions which both caused the trauma that CT Page 12908 resulted in her unwillingness to see him and which now have placed him in a secure facility far away from his daughter. From the facts, the court concludes that there is no reasonable likelihood that he would be able to establish a relationship with her at some point in the future. The court finds that this ground had also existed for a period of time greater than one year prior to the filing of the termination in December, 1997.
 C. REQUIRED FINDINGS
The court makes the following factual findings about Alberto A. based upon the clear and convincing evidence required by Connecticut General Statutes § 17a-112 (e):
1) Appropriate and timely services were provided by DCF to the family. Those services include services to benefit the child, case work services and for Alberto, treatment at Cornerstone and Connecticut Mental Health Center, which provided Alberto A. with psychiatric therapy and substance abuse treatment.
2) The court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. There were efforts made with the mother and the father. Unfortunately, Alberto A. has not been able to successfully deal with his mental health and substance abuse problems. As of January 11, 1998, the court found that continuing reunification efforts were no longer appropriate. (Jones, J.)
3) The DCF set reasonable and realistic goals for this family. There were no court-ordered expectations set for Alberto A. Nonetheless, the worker spoke with him about what was necessary and the issues were set forth in treatment plans.
4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the child has developed significant emotional ties. Giselle has not seen her father since 1995. As recently as 1997, in the assessment conducted by Dr. Salguero, the mere mention of him is enough to make her extremely anxious. The DCF worker testified that Giselle is close to her aunt and has thrived in her home. Her aunt wished to adopt her, if possible. CT Page 12909
5) Finding regarding the age of the child. Giselle is seven years and eight months old and has been in foster care since she was four.
6) Finding regarding efforts of the parent to adjust his circumstances, conduct or conditions to make it in the best interests of the child to return her to his home in the foreseeable future and (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. Alberto A. testified that he loved his daughter and did not want to lose contact with her. He stated that he wanted to be able to acknowledge holidays and her birthday and to send and receive letters. The testimony has shown that he did not take such steps during the time he was not prohibited from doing so. While the court accepts his position, that position does not take Giselle or her life into account. Given what has happened since 1997 with his arrest and confinement in a forensic mental health facility, the court finds that Alberto A. has been unable to adjust his conduct to make a return of Giselle to him feasible.
7) Finding regarding the prevention of the parent from having a meaningful relationship, etc. No inappropriate conduct is noted. DCF took the necessary steps to protect Giselle when it became clear that visitation was traumatic for her and secured a court order to end it.
 DISPOSITION
Giselle has been in the care of her maternal aunt for over three years. During that time, her mother passed away and her father is now in a secure forensic facility in Florida for an indefinite period of time. Giselle's biological father argues that there should be a transfer of guardianship to Maria P., the aunt. He does not want to be completely cut off from his daughter. The aunt is opposed to an open adoption. Further, the psychiatrist evaluating Giselle has reported that contact with the father is traumatic for Giselle and could have a lasting negative psychological impact on this already traumatized child. In the three years Giselle has been in foster care, the stability and consistency, which have been provided by her loving relationship with her aunt and her family and the stable home CT Page 12910 into which she has been welcomed, have sustained her. Based upon the foregoing findings, the court determines that it is in Giselle's best interests that the motion for transfer of guardianship be denied and that a termination of parental rights enter with respect to her biological father, Alberto A. and, accordingly, a termination of his parental rights is ordered. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. If Giselle's aunt continues to be willing to adopt her, it is the court's direction that she receive first consideration. The court further orders that a permanency plan for Giselle be submitted within ninety days. A review plan for her shall be filed in accordance with state and federal law.
Barbara M. Quinn, Judge Child Protection Session