[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Department of Children and Families (DCF) has filed petitions for termination of parental rights with respect to each of the seven siblings whose names and dates of birth are as follows:
 Ryshima G., d.o.b. November 20, 1986; Solomon R. Jr., d.o.b. June 3, 1988; Yetta R., d.o.b. October 15, 1989; Roshawn R., d.o.b. June 23, 1991; Toman R., d.o.b. January 6, 1993; Marquise G., d.o.b March 17, 1994; Johnae G., d.o.b. September 6, 1995.
The respondent, Martina G., is the biological mother of each of these children. The respondent, Solomon R., Sr., is the biological father of Solomon Jr., Yetta, Roshawn, Marquise and Johnae. The fathers of Ryshima and Toman are unknown.[1]
The termination of parental rights petitions were filed with respect to the six oldest children at the Superior Court for Juvenile Matters in New Haven on March 3, 1995. DCF initiated CT Page 9541 termination petitions at that court concerning Johnae on February 8, 1996. Those petitions were amended on March 26, 1996.
DCF originally alleged, with respect to each of the children, four statutory grounds for termination under the applicable subsections of C.G.S. § 17a-112 (b): abandonment, parental failure to rehabilitate, acts of omission or commission which have denied the children the care, guidance or control necessary for their physical, educational, moral or emotional well being, and lack of an ongoing parent child relationship. On February 3, 1997, the petitioner amended the petitions to delete the counts alleging lack of ongoing parent-child relationship against each respondent. On April 16, 1997, the court granted the respondent father's motion to dismiss the acts of omission and commission count pending against him in the petition pertaining to the minor child, Johnae.
In the TPR petitions concerning the five oldest children, DCF alleged that each ground for termination existed for a period of time longer than one year prior to the date when the actions were commenced. The petitioner alleged with respect to Marquise and Johnae — the two youngest children — that the legal reasons for termination existed for less than one year prior to the date when the petitions were filed, but that a waiver of the statutory "one-year requirement" is necessary to each child's best interests.
PROCEDURAL CONTEXT
The petitioner received orders of temporary custody for Ryshima, Solomon Jr., Yetta and Roshawn on January 22, 1992. These children have been under DCF's care and custody continuously since then. DCF also filed neglect petitions with respect to each child on January 22, 1992.
Ryshima, Solomon Jr., Yetta and Roshawn were subsequently adjudicated as neglected and uncared for children and committed to DCF for a period not to exceed 18 months on March 22, 1992. These commitments were thereafter extended by the court on September 21, 1993, March 8, 1995 and September 9, 1996.
Toman was born on January 6, 1993. DCF ruled a neglect petition and request for an ex parte order of temporary custody on February 1, 1993. The court did not grant an ex parte order, but instead scheduled a show cause hearing on the issue of CT Page 9542 Toman's temporary custody. The court in New Haven awarded Toman's temporary custody to DCF following the show cause hearing there on February 9, 1993. Toman has been in the petitioner's foster care continuously since then. He was committed to DCF as a neglected child on March 4, 1993. This commitment was subsequently extended by the court on September 2, 1994, March 8, 1995 and September 9, 1996.
The minor child, Marquise, was voluntarily placed with DCF by Martina G. shortly after his birth on March 17, 1994. He was committed to the petitioner on September 2, 1994, and the commitment was extended on March 8, 1995 and September 9, 1996.
Johnae, the youngest child, followed her six older siblings into foster care when DCF received an OTC shortly after her birth on September 6, 1995. She was committed on October 3, 1995 and that commitment was also extended on September 9, 1996.
All of the termination cases were subsequently transferred to this venue for trial. The trial commenced before the Child Protection Session in Middletown on October 23, 1996. On that date, the respondent Martina G. indicated that she wished to consent to the termination of her parental rights with respect to her three youngest children — Toman R., Marquise G. and Johnae G. (She indicated on that date that she still wished to contest the termination of her parental rights with respect to the four oldest children). Martina G. filed separate written affidavits of consent with respect to each of the three youngest children. The court deferred action on the affidavits on October 23rd. Martina G. subsequently stopped attending the termination trial, and the court never canvassed the respondent mother about her decision to consent. The court was therefore unable to determine whether the mother's decision to consent was knowingly and voluntarily made. Accordingly, the court finds the affidavits submitted by the mother to be non-operative, and will take no action in this proceeding based upon Martina G.'s purported consent to the termination of her parental rights.
The introduction of evidence and testimony in this matter began on October 23, 1996. The trial continued on October 24, 1996, October 25, 1996, December 16, 1996, December 17, 1996, December 18, 1996, January 21, 1997, January 22, 1997, February 25, 1997, April 9, 1997, April 10, 1997, April 16, 1997 and April 17, 1997, when the matter concluded. On the last day of trial, counsel requested and received permission to submit post-trial CT Page 9543 memoranda of fact and law. Initial briefs were received from DCF, counsel for the minor children and the respondent father.[2]
The father's attorney filed a reply brief on June 4, 1997. On June 11, 1997, petitioner's counsel filed a motion for extension of time in which to file a reply brief. An extension until June 20, 1997 was granted. DCF's reply memorandum was received by the court on June 20, 1997.
At trial, the petitioner introduced 20 full exhibits into evidence and offered testimony from the following witnesses:
 1. Anthony Campagna, PhD., court-appointed psychologist; 2. Charles Bradley, DCF social worker; 3. Anita Williams Murray, case manager, Hill Health Center; 4. Karen Mack, counselor, Crossroads; 5. Lily M., the children's paternal aunt; 6. Marie Franzino, staff member, New Life Center; 7. Ann M., foster mother of Yetta and Ryshima; 8. Jesus Algarin, substance abuse counselor, Crossroads; 9. Carrie L., Solomon Jr.'s current foster mother; 10. Gwendolyn C., foster mother of Toman and Marquise; 11. William Metzger, social worker, Casey Family Services; 12. Donna Miranda, social services assistant, DCF; 13. Rosalyn Williams, DCF social worker; 14. Alicia Ricks, DCF social worker; 15. Shawn Wright, DCF social worker; 16. Esther Cox-Green, DCF social worker.
The respondent, Solomon R., Sr., offered 25 full exhibits into evidence, testified on his own behalf, and called the following additional witnesses:
 1. Albert R., Solomon Sr.'s uncle; 2. Shaun Kennedy, counselor, Department of Corrections; 3. Jay Schuder, counselor, Department of Corrections; 4. Robert Sireno, VISTA volunteer, Conn. Prison Association; 5. Esther Cox-Green, DCF social worker.
The attorney for the minor children offered one exhibit into evidence, but did not call any witnesses. Counsel for Martina G. did not introduce evidence or testimony.
DCF, each respondent and the minor children were represented throughout the entire proceeding by their respective attorneys The father, Solomon R., Sr., was present in court on each day of CT Page 9544 the trial. The mother, Martina G., initially participated in trial, did not appear in court on April 9, 1997 or on any of the subsequent dates.[3]
 FACTUAL FINDINGS
The court, having carefully considered all of the evidence and testimony introduced during this lengthy and somewhat complicated proceeding, makes the following findings of fact:
Both of the respondents have histories of chronic substance abuse. For more than five years, this pervasive pattern of chemical dependency has rendered Solomon R., Sr. and Martina G. unable to appropriately care for their children. The four oldest siblings have been in state care continuously since January 1992. Each of the three youngest children have lived in foster care for virtually all of their lives.
Solomon R., Sr., testified that he was incarcerated for six months in 1992 and for seven months in 1993. He was imprisoned during 1994 until March 29th when he was sent by the Department of Corrections (DOC) to the Crossroads halfway house for residential drug treatment. He remained at this facility for less than two months. Solomon R., Sr., left Crossroads without permission, and without successfully completing his treatment, on May 16, 1994. (Petitioner's Exhibit 16). Several days before he went AWOL from Crossroads, the father had tested positive for illegal drugs. (Petitioner's Exhibit 16). As a result of his unauthorized departure from the treatment facility, Solomon R., Sr., was charged with the criminal offense of escape from custody. He was subsequently apprehended, and reentered prison in 1995. The respondent father was in DOC custody continuously from that time until the date this trial ended. He was scheduled to be released from prison during May of this year.
Solomon R., Sr.'s criminal record is lengthy and includes approximately nine or ten convictions. (Petitioner's Exhibit 16, Page 13 and Petitioner's Exhibit 1, Page 6). Per his own testimony during the TPR trial, the longest consecutive period of time that the father has not been incarcerated during the past five years was an eight-month period in 1992-1993. Solomon R., Sr., admitted during his testimony that his extensive involvement with the criminal justice system resulted primarily from his use and sale of illegal drugs. He told the court that he "had no conscience" and cared only about drugs when he was abusing CT Page 9545 narcotics. He candidly admitted that he "wasn't doing much of [anything] for [his] children" when he used illegal substances. Solomon R., Sr., only saw his children sporadically — on the streets or in the foster homes where they were placed — during the intermittent times since 1992 when he was not in jail. The respondent father's admissions, and other evidence at trial, including the testimony of social workers and foster parents, support a finding by the court that Solomon R., Sr., had only occasional and cursory involvement in the lives of his children from 1992 until his most recent incarceration in 1995.
According to his aunt, Lilly M., Solomon R., Sr., is a "nice man" when he is substance-free, but becomes angry when he abuses narcotics. This drug-related change in the father's personality and demeanor was corroborated at trial by the testimony of social workers, and by the respondent's criminal record. There was evidence, which the court accepts, that Solomon R., Sr., was at times physically abusive to Martina G. It was also proven that the respondent father was convicted of assault on a correctional officer. Solomon R., Sr., admitted the incident during his testimony and claimed that he was withdrawing from heroin when it occurred.
Prior to 1995, the DOC-mandated treatment program at Crossroads was the only rehabilitative service which the father had received since the children were placed in 1992. One of the defenses which was raised during this trial was an allegation that DCF had failed to offer him timely and appropriate reunification services. While it is true that the petitioner was unable to offer many services to Solomon R., Sr., the court finds that the father's lifestyle, substance abuse, frequent periods of incarceration, and lack of interest in services during the period in question prevented DCF from doing so. The court also finds that prior to 1995, the respondent father never requested assistance from the petitioner. Furthermore, his conduct in leaving Crossroads — a program which offered intensive residential treatment for his addiction — demonstrated a resistance to rehabilitative assistance at that time.
Since the biological father's most recent incarceration in 1995, there has been a significant change in Solomon R., Sr's attitude about reunification services. There was extensive evidence at trial, which the court accepts as credible, that the father has sought and participated successfully in a number of DOC rehabilitation programs. These have included educational CT Page 9546 programs, the Fatherhood Seminar I, Fatherhood Seminar II, various levels of a DOC rehabilitative initiative known as the Tier Program, NA, AA, the Alternative to Violence Project, the Families Activities and Parenting Program and the Connecticut Prison Association Resettlement Program. The testimony of prison personnel and the documentary evidence offered on the respondent's behalf, established that Solomon R., Sr., has made a concerted effort during the past two years to successfully participate in assistance programs offered by DOC. (See Respondent Father's Exhibits A-G).
To the extent it was possible to do so within the prison setting, the father has also attempted within the past two years to reestablish connections with the children. He requested visitation with the children,[4] solicited Christmas gifts for some of them through an inmate assistance program and tried to take advantage of the limited number of parenting programs which DOC offers to prisoners. Jay Schuder, a corrections counselor, testified that Solomon R., Sr., spoke with him fondly about his children, and about his desire to be a more responsible parent. Another corrections counselor, Shaun Kennedy, indicated at trial that Solomon R., Sr., evidenced sincerity and concern about the children, and vigorously pursued visitation with them. Based on the forgoing, the court finds that the respondent father made consistent effort to achieve reunification with the children while incarcerated during the past two years.
Martina G.'s chronic abuse of cocaine and alcohol resulted in her losing temporary custody of Ryshima, Solomon Jr, Yetta and Roshawn in January 1992, and in the subsequent commitment of these children to DCF on March 11, 1992. Despite the removal of these children from her care, the mother continued to drink and take drugs, even during subsequent pregnancies. Toman, who was born in 1993, tested positive for cocaine after delivery. Marquise (born in 1994) and Johnae, (born in 1994) were also found to be cocaine-positive at birth. Due to the mother's drug addiction and inability to provide for their care, each of the three youngest children were removed from the mother's custody by DCF.
When the four oldest children were committed on March 11, 1992, Martina G. was given court-approved expectations by Judge John Downey at the Superior Court for Juvenile Matters in New Haven. (Petitioner's Exhibit 17). They required that the mother keep all appointments set by or with [DCF], keep her attorney and CT Page 9547 the petitioner advised of her whereabouts, participate in drug/alcohol counseling with the APT foundation, secure and maintain adequate housing and income, and have no involvement with the criminal justice system. (Petitioner's Exhibit 17). In the years which followed, Martina G. also signed five service agreements with DCF (Petitioner's Exhibit 8). Those documents detailed the rehabilitative efforts which the mother needed to accomplish in order to regain her children, and the services which would be made available to help her do so.
The court finds that DCF offered Martina G. numerous appropriate services during the period between 1992-1995. These included many substance abuse therapy programs. Unfortunately, the court also finds from the extensive evidence presented that Martina G. was unable to cooperate with most of those services, or to overcome the chronic polysubstance abuse which caused her to neglect the children.
Martina G. entered the Connections residential drug treatment program in early November 1993, but left within a week. (Petitioner's Exhibit 14, Page 12). She was admitted to the Crossroads facility in New Haven for in-patient therapy there on December 12, 1993, but was discharged without successfully completing the program 10 days later. (Petitioner's Exhibit 14, Page 1). Alicia Ricks, the DCF social worker who was assigned to this case from September 1993 until November 1995, testified that Martina G. was referred over the years to approximately 10 substance abuse treatment programs (including a second admission at Crossroads during 1995). She did not successfully complete any of them.
Martina G. was enrolled in out-patient drug treatment during 1994-1995 with a New Haven-based program known as the Woman's Corner. According to Anita Williams Murray, a case manager with the treatment facility, the respondent mother failed to participate with the program during the following periods of time:
 March 23, 1994 — September 13, 1994; December 13, 1994 — March 7, 1995; April 4, 1995 — August 11, 1995.
The Woman Corner's last contact with Martina G. was on September 15, 1995. CT Page 9548
The mother's most successful involvement in substance abuse therapy occurred during 1995 when she entered the New Life Center in Pomfret, Conn. At the time, Martina G. was pregnant with Johnae. She was admitted to the New Life Center on March 10, 1995, and her participation in that program was good. (Petitioner's Exhibit 13, Page 8). Regrettably, Martina G. became ill on May 9, 1995 while attending a court-ordered evaluation in New Haven. She was admitted at Yale New Haven Hospital on that date. The New Life Center, apparently believing that Martina G. had left their facility, released her bed to another person and discharged her on May 12, 1995. DCF subsequently attempted to place the respondent at Coventry House in Hartford. She initially agreed to accept this placement, but ultimately declined admission there. As noted above, Johnae was born with cocaine in her system on September 6, 1995.
Ms. Ricks testified that in addition to drug treatment programs, DCF offered the mother a domestic violence program, assistance with shelter placements, transportation and visitation. With respect to visitation, Ms. Ricks testified that Martina G. visited her children through DCF 10 times during the two years that Ms. Ricks worked on the case. During that period, Martina G. could have had 50 visits.
Martina G. had one visit with Johnae after her birth, but failed to see the child thereafter for a number of months. Her whereabouts were unknown to DCF from October 1995 until after the TPR petition was filed in February 1996. The mother was incarcerated on drug-related charges at Niantic during much of 1996.
ADJUDICATION OF SOLOMON R., SR.
(As to the minor children Solomon R. Jr., Yetta R., Roshawn R.and Marquise G., pursuant to petitions filed on March 3, 1995,and based upon facts until that date. As to Johnae G., pursuantto the petition filed on February 8, 1996, and based upon factsuntil that date.)
 1. Abandonment: G.G.S. § 1 17a-112 (b)(1) defines this non-consensual ground for termination of parental rights. It applies in those cases where a parent has failed to maintain a reasonable degree of interest, concern or responsibility for the welfare of a child. The use of the word "maintain" in the statutory language "implies a continuing, reasonable degree of CT Page 9549 concern." In re Kezia M., 33 Conn. App. 12, 18, 632 A.2d 1122
(1993); In re Michael M., 29 Conn. App. 112, 614 A.2d 832 (1992);In re Rayna M., 13 Conn. App. 23, 37-38, 534 A.2d 897 (1987); Inre Migdalia M., 6 Conn. App. 194, 208-209, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). The abandonment statute does not contemplate a sporadic showing of interest, concern or responsibility for the welfare of a child. In re KeziaM., supra.
Solomon R. Jr., Yetta and Roshawn were placed in DCF foster care during January 1992, and were committed to the petitioner's custody on March 22, 1992. Marquise was committed on September 2, 1994.
The biological father admitted during trial that prior to his most recent incarceration Toman (who is not his biological child) and Marquise "were not in my realm." He indicated that he did not see these children then because of his chemical dependency. Dr. Anthony Campagna, the court-appointed psychologist, observed Solomon R., Sr., interact with Toman and Marquise on August 1, 1995. He noted that neither boy showed any recognition of Solomon R., Sr., nor any particular attachment to him. (Petitioner's Exhibit 1, Page 12). Dr. Campagna wrote in his report (and testified during this trial) that the biological father admitted during the evaluation that he had previously had no contact with Toman and Marquise.
At one time, Solomon R., Sr., lived with Martina G. and the children Ryshima (also not his biological child) Solomon Jr. and Yetta. However, he admitted to Dr. Campagna during the evaluation that although he had prior association with the four older children, he had not visited consistently with them since March 1992. The court finds that from the time Solomon Jr., Yetta and Roshawn went into foster care, until the TPR petitions were filed three years later, Solomon R., Sr., visited them only sporadically during the intermittent periods when he was not incarcerated. He did not maintain a reasonable degree of interest or concern in the welfare of these children, and he was not actively involved in their lives. Solomon R., Sr., candidly admitted this during his testimony when he commented that he "wasn't doing much of [anything]" for the children during the time he was abusing narcotics and getting arrested.
The court finds that DCF proved by clear and convincing evidence that Solomon R., Sr., abandoned Solomon R. Jr., Yetta CT Page 9550 R., Roshawn R. and Marquise G. as alleged in the TPR petitions. With respect to Solomon Jr., Yetta and Roshawn, the court finds that this ground was proven by clear and convincing evidence to have existed for a period of more than one year prior to the date when the TPR proceedings were initialed Marquise was born on March 17, 1994 and the TPR petition concerning him was filed on March 3, 1995. Although one year had not yet passed, the court finds by clear and convincing evidence that it is in Marquise's best interests, given all the facts and circumstances of this case, that the "statutory one year requirement" be waived with respect to this count.
Johnae was born on September 6, 1995. As noted above, the TPR petition concerning her was filed with the court on February 8, 1996. At that time, the petition alleged that Johnae's biological father was unknown. It was subsequently amended after genetic testing established that Solomon R., Sr., who was then incarcerated, was the child's father. Once his paternity was confirmed, Solomon R., Sr., requested visits with Johnae. Since his status as biological parent was unknown at the time DCF brought the termination petition Solomon R. had no opportunity to habilitate a parent-child relationship before the termination proceeding was initiated.
The court finds that DCF did not meet its statutory burden of proof on this count with respect to Johnae. The petitioner failed to establish by clear and convincing evidence that Solomon R., Sr., abandoned this child, and this count of the petition is hereby DISMISSED with respect to her.
2. Failure to rehabilitate: Pursuant to C.G.S. § 17a-112
(b)(2), this ground for termination of parental rights exists where:
 ". . . the parents of a child who has been found by the superior court to have been neglected or uncared for have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the child, they could assume a responsible position in the life of the child."
As employed in this statute, the term "personal rehabilitation" has been defined in Connecticut case law to mean the restoration of a person to his or her former constructive and useful role as a parent. In re Migdalia M., supra, 203. When CT Page 9551 considering allegations of failure to rehabilitate in termination cases, the court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and also determine whether or not rehabilitation will occur within a reasonable time. In re Felicia D., 35 Conn. App. 490, 500,646 A.2d 862 (1994); In re Luis C., 210 Conn. 157, 167, 554 A.2d 772
(1989) (Quotation marks omitted).
During the period from January 1992 until March 1995, Solomon R., Sr., continued to abuse narcotics and violate the criminal laws. He rebuffed the opportunity for the intensive, residential drug treatment when he left the Crossroads program without permission in May, 1994. He displayed little interest in his parental responsibilities, and never requested rehabilitative services from DCF, or other agencies.
The court finds, with respect to the minor children Roshawn R. and Marquise G., that DCF has proven by clear and convincing evidence that for a period of time longer than one year Solomon R., Sr., failed to rehabilitate as alleged in the termination petitions concerning these two children. Specifically, the petitioner proved that the respondent failed to achieve such degree of personal rehabilitation as would encourage the belief, within a reasonable time, that he could assume a responsible position in the lives of these children. The court is mindful of the rehabilitative efforts which the respondent father has undertaken while incarcerated over the past two years. However, Roshawn is six years old, and Marquise is three. They each have spent most of their young lives in foster care, and, while they have had prison visits, they do not have the type of bond with Solomon R., Sr., that was established with some of their older siblings. For the forgoing reasons, given the ages and particular needs of these children, the court finds that it would not be reasonable to allow the father additional time to habilitate a relationship with Roshawn and Marquise.
The petitioner did prove, with respect to Solomon Jr. and Yetta, that the father had failed to achieve a sufficient degree of rehabilitation for the requisite period of time prior to March 3, 1995. But the second prong of C.G.S. § 17a-112 (b)(2), which requires the court to find that there was no belief that the respondent could assume a responsible position in the lives of these children within a reasonable time, was not satisfied by a showing of clear and convincing evidence. Dr. Campagna's CT Page 9552 evaluation revealed that Yetta, who will turn eight in October, was sad about not seeing her father and wanted him to be a part of her life. (Petitioner's Exhibit 1, Page 11). Solomon Jr., who is nine years old, has recently experienced a number of emotional and disciplinary problems which have jeopardized his current specialized foster placement, and may require that he be sent to a residential facility. But Dr. Campagna found in his 1995 evaluation that an "active and vital parent-child relationship" existed between Solomon R., Sr., and both Yetta and Solomon Jr. Those findings, coupled with the advances which the father has made towards personal rehabilitation since 1995, lead the court to believe that Solomon R. could achieve a responsible role in the lives of Solomon and Yetta with a period of time that is reasonable for these older children. For this reason, the counts of parental failure to rehabilitate alleged against Solomon R., Sr., with respect to Yetta and Solomon R. Jr. are herebyDISMISSED.
The court also finds that the count of parental failure to rehabilitate which was alleged against the biological father in the February 8, 1996 petition pertaining to Johnae has not been proven by clear and convincing evidence. As noted above, the TPR petition commenced on behalf of Johnae was filed before Solomon R., Sr.'s paternity was established. When his parental status was determined, the respondent requested visitation, and was continuing with the rehabilitative efforts referred to above. The court cannot find that the respondent failed to rehabilitate for a period of time in excess of year, and it cannot find that a waiver of the statutory one year period is in the best interests of Johnae. Although Johnae, like Roshawn and Marquise, is very young, the court finds that the respondent was never afforded the opportunity to habilitate a relationship with this child prior to the commencement of this action, and that he has attempted to do so since February 8, 1996. This count of the petition, with respect to Johnae G., is also DISMISSED.
 3. Acts of omission or commission: C.G.S. § 17a-122 (b) (3) sets forth the criteria for this ground for termination. It authorizes the court to make an adjudication where it determines that a child, as the result of acts of parental omission or commission, has been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well being. A string of decisions from our Supreme and Appellate Courts have limited the application of this statute to those cases where specific acts of parental omission or CT Page 9553 commission have caused serious physical or emotional injury to a child. (emphasis added) In re Kelly S., 29 Conn. App. 600, 614,616 A.2d 1161 (1992); In re Theresa S., 196 Conn. 18, 25-27,491 A.2d 355 (1985); In re Sean H., 24 Conn. App. 135, 144-145,586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078 (1991).
During trial, this court dismissed the acts of omission/commission count in the TPR petition concerning to Johnae. Having carefully considered all of the evidence and testimony relevant to these counts in the remaining four petitions, the court finds that DCF did not prove by clear and convincing evidence that any specific acts or omissions of the biological father caused serious physical or emotional injury to Solomon R. Jr, Yetta R., Roshawn R., or Marquise G. Accordingly, these counts of the petition with respect to each of the aforementioned children are hereby DISMISSED.
 ADJUDICATION OF MARTINA G.
(As to the minor children Ryshima G., Solomon R. Jr., Yetta R.,Roshawn R., Toman R., and Marquise G., pursuant to the petitionsfiled on March 3, 1995, and based upon facts until that date. Asto Johnae G., pursuant to the petition filed on February 8, 1996,and based upon facts until that date.)
 1. Abandonment: The court finds that the biological mother's chronic polysubstance abuse problem has prevented her from playing a meaningful parental role in the lives of her children. Martina G. visited her older children 10 times out of a possible 50 opportunities during the time that DCF social worker Alicia Ricks was assigned to the case. Her contacts with Ryshima, Solomon Jr., Yetta and Roshawn have been sporadic since 1992.
Martina G. admitted to Dr. Campagna during the 1995 psychological evaluation that she had virtually no contact with Marquise, and very little contact with Toman (Petitioner's Exhibit 1, Page 14). The biological mother stopped visiting with Johnae shortly after she was born, and displayed little interest in her youngest child. DCF social worker Shawn Wright testified that he made arrangements for Martina G. to visit the infant at the foster home shortly after she was born. Martina G. visited one time, then failed to appear for subsequent visitation appointments at the foster home. The mother had only one contact with the child from mid-September 1995, until the TPR petition on Johnae was filed on February 8, 1996. CT Page 9554
The court finds that DCF has proven by clear and convincing evidence that Martina G. abandoned each of her seven children as alleged in the termination petitions. With respect to Ryshima G., Solomon R. Jr., Yetta R., Roshawn R., and Toman R., the court finds by clear and convincing evidence that this statutory ground for termination existed for a period of time longer than one year. The court further finds that DCF has proven by evidence that is clear and convincing that it is in the best interests of the two youngest children — Marquise G. and Johnae G., — that the statutory "one year requirement" be waived with respect to this count. The court has specifically considered the ages, needs, and circumstances of these children in making this finding.
2. Failure to rehabilitate: DCF offered Martina G. numerous opportunities to attend drug treatment. These involved both out-patient and residential programs. During the period from 1992 until 1995, the respondent failed to complete approximately 10 substance abuse programs. Each of her three youngest children tested positive for cocaine at birth, and she was incarcerated on a drug-related charge during 1996. Despite repeated offers of assistance from DCF and other service providers, the mother has made no sustained progress towards overcoming her chronic addiction. As a result, her four oldest children have been relegated to state care for more than five years, and her three youngest children have spent almost all of their lives in foster placement.
The petitioner has proven by clear and convincing evidence, with respect to each of the mother's seven committed children, that Martina G. has failed to rehabilitate as alleged in the termination petitions. Clear and convincing evidence established with respect to Ryshima G., Solomon R. Jr., Yetta R., Roshawn R. and Toman R. that this ground for termination existed for more than one year. DCF also proven by clear and convincing evidence the it is in the best interests of Marquise G. and Johnae G. that the statutory "one year requirement" be waived on this count with respect to the two youngest children.
3. Acts of omission or commission: Reference is made to the court's adjudicatory decision on this count in the TPR petitions against the biological father, Solomon R., Sr. The court finds that DCF failed to prove by clear and convincing evidence that specific conduct of Martina G. caused serious physical or CT Page 9555 emotional injury to any of the seven subject minor children. Accordingly, this count against the biological mother, as set forth in each of the seven TPR petitions in this case, is herebyDISMISSED.
 DISPOSITION AS TO SOLOMON R. SR.
 (Based on facts through the conclusion of this trial).
Ryshima G. and Toman R. are not the biological children of Solomon R., Sr. The court has dismissed each of the three counts alleging statutory grounds for termination against the respondent father with respect to the minor child Johnae G. Accordingly, the court will not make dispositional findings with respect to these these children as to the respondent father.
Dr. Campagna, the court-appointed psychological evaluator, found in 1995 that "an active and vital parent-child relationship" existed between Solomon R., Sr., and the children Yetta R. and Solomon R. Jr. (Petitioner's Exhibit 1, Pages18-19.) He opined that no active relationship existed then between the father and Roshawn R. (Petitioner's Exhibit 1, Page 19). In the summary of his written report, he also suggests that a relationship between Solomon R., Sr., and Marquise did not exist.[5] At the time he compiled his evaluation report in 1995, the psychologist did not, of course, have the information presented at trial about each parent's behavior and attempts at rehabilitation during the two years which have transpired since then.
Dr. Campagna wrote in his report that "evaluation results suggest that [Solomon R., Sr.] and [Martina G.] cannot be expected to achieve a sufficient degree of rehabilitation within a reasonable period of time so that they call [assume] a responsible position for their children. Based on their substance abuse history and previous treatment experience of the parents, they may be expected to require up to a year on inpatient rehabilitation followed by a period of outpatient treatment before they can begin long-term maintenance support." (Petitioner's Exhibit 1, Page 18).
Despite reaching this conclusion, Dr. Campagna found that it would not be detrimental to the best interests of Ryshima, Solomon R. Jr. and Yetta to allow both of the biological parents additional time to rehabilitate a relationship with the three CT Page 9556 older children. However, with respect to the then three youngest siblings — Roshawn, Toman and Marquise — he opined that it would be detrimental to allow either respondent further time for rehabilitation. As he noted during his testimony during this trial, Dr. Campagna "drew a line" between his recommendations for the three oldest children, and his recommendations as to the best interests of the three younger siblings.
The petitioner has argued that the psychologist's recommendations are inconsistent with his findings, particularly in light of his determination that Solomon R., Sr., and Martina G. "cannot be expected" to assume responsible parental roles within a reasonable time.
The court understands the rationale of DCF's argument. However, it notes that the psychologist's summary was rendered in chronologically numbered written answers to the specific written questions which were posed to the evaluator when the matter was referred to him. Furthermore, Dr. Campagna's recommendation must also be viewed in the context of his understanding of the various relationships which each of the seven children had with their biological parents at that time.
Dr. Campagna described the relationship between Martina G. and Ryshima, Solomon Jr. and Yetta as an "ongoing and vibrant parent child relationship." He characterized Solomon R., Sr.'s rapport with his children Yetta and Solomon R. Jr. as an "active and vital" parent-child relationship. The psychologist determined that Yetta was attached to her father, had all emotional need to have him in her life, and was sad about not seeing him. (Testimony of Dr. Campagna.) Conversely, Dr. Campagna determined that "no active relationship" existed between Roshawn and Toman and Solomon R., Sr. (Petitioner's Exhibit 1, Page 19) and that Martina G. had a "much weaker relationship" with Roshawn and "no relationship" with "Marquise and Toman." (Petitioner's Exhibit 1, Page 18). He noted, with respect to Roshawn, Toman and Marquise, that their lack of strong prior relationships with both parents, their ages and the particular developmental needs of the these children led him to recommend that it would be detrimental to delay a termination in favor of allowing Martina G. and Solomon R., Sr., further time to rehabilitate.
The court does not find that Dr. Campagna's 1995 recommendations are inconsistent. In a problematic and complex CT Page 9557 case involving seven different children, the psychologist's conclusions result from a thoughtful analysis, based on the children's varying ages, desires and developmental needs, of what was in each of their best interests at the time. In essence, Dr. Campagna found that the older children had stronger bonds with Martina G. and Solomon R., Sr., and could afford to give the parents more time to re-enter their lives. He also found that the converse was true with respect to the three younger children, who had weaker, or non-existent, ties with their biological parents.
During the two years which have passed since Dr. Campagna's evaluation, Solomon R., Sr., has made attempts, within the confines of a prison setting, to rehabilitate his life and reestablish parental ties with all of the children. It is of significance that he enjoys a close relationship with Ryshima, who is not his biological child. The evidence at trial established that he loves Ryshima and treats her as his own child, and that the child reciprocates this affection. The court has reviewed the respondent's pictorial evidence of the visits which he had with many of the children, and accepts as proven that he has been vigorous in his attempts to establish a parental link with each of the subject children.
Solomon R. was scheduled to be released from custody in May, 1997. He will need to secure housing, employment and substance abuse treatment to help him battle his extensive drug problem. This, will certainly require additional time.
Roshawn, age 6, and Marquise, who is three, have spent much of their young lives in foster care. Unlike their older siblings, they do not have strong attachments with their biological parents. Despite the father's attempts since 1995 to establish contact with them through visits and other means, and despite his efforts to obtain rehabilitation, the court finds that it would be detrimental for both of them to delay their permanency planning any further. The court finds, after considering all of the evidence, and the particular needs of each child, that the petitioner has proven by clear and convincing evidence that it is in the best interests of Roshawn R. and Marquise G. that the parental rights of Solomon R., Sr., be terminated. In reaching this conclusion, the court has made and considered the statutory findings required by C.G.S. § 17a-112 (d), which are set forth with specificity below.
The court, based on the totality of the evidence in this CT Page 9558 case, (including but not limited to the recommendation of Dr. Campagna, the ages of the children, and their particularized needs) finds that the petitioner has not proven by clear and convincing evidence that it is in the best interests of Solomon R. Jr. and Yetta R. that Solomon R., Sr.'s parental rights be terminated with respect to these children.
DISPOSITION AS TO MARTINA G.
 (As to all seven children, based on facts through the conclusion of trial)
The court finds that from 1992 through the present time, Martina G. has been unable to overcome the drug problem which has disrupted her life, and those of her seven children. The pervasive power which illegal drugs has over the respondent is reflected in the fact her last three children were born with cocaine in their systems, and that all of her seven children were neglected to the point that they each have spent a number of years in various foster care placements, where they remain today. The results of the each respondent's drug use and criminal activity have been far-reaching. The children have been forced to grow up without their biological parents, and without each other. They reside in five different foster homes, and at the time of trial there was the suggestion that Solomon Jr.'s emotional, education and behavioral problems might require him to be placed in a residential treatment facility. All of the children, in one way or another, have been damaged by the neglect which they have experienced over the years.
Unfortunately, Martina G. still has not been able to recognize these massive problems, nor successfully ameliorate them. She has not successfully completed any of the approximately 10 substance abuse treatment programs to which she was referred. Following Johnae's birth in September 1995, she attended one visit with the infant, and then dropped out of her life. Her whereabouts were unknown to DCF from mid-September 1995 until February 8, 1996, when the TPR petition pertaining to Johnae was filed. She was thereafter incarcerated, on a drug related charge, for much of 1996.
The court finds that Martina G. has not made any sustained progress towards rehabilitation during the past five years, and has demonstrated only sporadic and inconsistent interest in her children. This lack of interest is reflected in the fact that CT Page 9559 Martina G. did not attend the last four days of this trial, nor contact the court or her counsel to indicate why she was not present. Martina G.'s indifference to her children and lack of rehabilitation over the past five years, (and particularly during the time since Dr. Campagna's evaluation) compels the court to conclude that the mother will not be able to play a responsible role in the lives of her children within any reasonable amount of time. Her situation has continued to deteriorate since Dr. Campagna issued his recommendation. The court finds that the petitioner has proven by clear and convincing evidence that it is in the best interests of Ryshima G., Solomon R. Jr., Yetta R., Roshawn R., Toman R., Marquise G. and Johnae G. that Martina G.'s parental rights be terminated with respect to each of these seven children. In making this determination, the court has made and considered the statutory findings mandated by C.G.S. § 17a-112
(d), which are set forth with specificity herein.
STATUTORY FINDINGS PURSUANT TO C.G.S. § 17a-112 (d)
 (As to both respondents)
 1. Services offered: The court finds by clear and convincing evidence that DCF and other agencies and treatment providers offered reasonable and appropriate reunification and rehabilitative services to each of the respondents. Martina G. was offered drug treatment at a number of facilities including Woman's Corner, Crossroads, Connections, New Life Center, Coventry House, and the Mother's Project. She was referred to shelters known as the Life Haven Shelter and the Derby Shelter. (See Petitioner's Exhibits 2 and 3). DCF also provided Martina G. with transportation, visitation assistance and social work services. The court has already found that the father's substance abuse, lifestyle, and frequent periods of incarceration prevented DCF from offering services to the respondent father prior to 1995. DOC released Solomon R. from custody to attend the Crossroads residential drug treatment program in 1994. He went AWOL from the facility approximately six weeks later. Since his most recent incarceration, the respondent father has taken advantage of numerous DOC rehabilitative programs, as listed at length above. During the past two years, DCF has transported the minor children to visit with Solomon R., Sr., in prison.
2. Reasonable efforts to reunite: The court finds by clear and convincing evidence that DCF made reasonable efforts to reunite both respondents with their minor children. This was done CT Page 9560 through the services referred to above and through visitation, at the parent's places of confinement, and elsewhere.
3. Court orders: No court orders entered with respect to either respondent parent ill this case. The mother signed court-approved expectations when the four oldest children were committed to the petitioner, and subsequently signed a number of written service agreements with DCF. No court-approved expectations or service agreements were signed by the father. The court finds by clear and convincing evidence that both respondents knew what they needed to do in order to achieve reunification with their children. It was necessary that both overcome their substance abuse problems and avoid further involvement with the criminal justice system.
4. Feelings and emotional ties with parents: Each of the children are in foster care. Ryshima, Yetta, and Solomon Jr., were found by Dr. Campagna to have active and important parent-child relationships with each respondent in 1995. At that time, there was a weaker bond between Roshawn and Martina G. Dr. Campagna did not then believe that an active relationship existed between Roshawn and Solomon R., Sr. The psychologist also reported in 1995 that there was no relationship between Marquise and Toman and either parent. Johnae had not yet been born. The psychological evaluation performed in 1995 by Dr. Campagna was not updated. The father has reestablished visitation with all of his children, including Johnae, and demonstrative evidence suggests that the children have enjoyed their contacts with Solomon R., Sr.
5. Ages of the children: Ryshima is 10, Solomon Jr. is nine, Yetta is seven, Roshawn is six, Toman is four, Marquise is three, and Johnae is one. (She will turn two on September 6, 1997). The specific date of birth of each child is listed on the first page of this memorandum of decision.
6. Parental efforts to adjust conduct, conditions orcircumstances: The court finds that Martina G. has not made sufficient efforts to adjust her conduct, conditions or circumstances so as to encourage the belief that any of the seven children could be restored to her parental home within a reasonable future time. The court finds that Solomon R., Sr., has made efforts to adjust his conduct, conditions or circumstances. The court finds that these efforts have not been sufficient enough to encourage the belief that the minor children Roshawn R. CT Page 9561 and Marquise G. could be restored to his parental home within a reasonable time. The court has considered the father's efforts to adjust in reaching the determination that his parental rights should not be terminated with respect to the minor children Yetta R., Solomon R., Jr. and Johnae G.
7. Impediments to maintaining a meaningful relationship: The court finds that no unreasonable action by the petitioner or any other agency or individual, and no adverse economic circumstance of any respondent, prevented either parent from maintaining a meaningful relationship with any of these children.
JUDGMENT — AS TO SOLOMON R., SR.
Having made and considered the seven statutory findings enumerated above, having found as proven by clear and convincing evidence at least one statutory ground for termination of parental rights against Solomon R., Sr., with respect to the minor children, Roshawn R. and Marquise G., and having further found by clear and convincing evidence that it is in the best interests of each of these children that the parental rights of Solomon R., Sr., should be terminated it is hereby ORDERED that the parental rights of Solomon R., Sr., as to Roshawn R. and Marquise G. be, and hereby are, terminated.
The court has dismissed each of the three counts alleged for termination against Solomon R., Sr., contained in the petition with respect to the minor child, Johnae G. That petition is hereby ordered DISMISSED.
Although the court found that one ground for termination of parental rights was proven by clear and convincing evidence as to the minor children Solomon Reed Jr. and Yetta R., the court did not find by clear and convincing evidence that it was in the best interests of either child that their father's parental rights be terminated. Accordingly, a judgment of termination against the biological father does not enter with respect to either of these children.
JUDGMENT — AS TO MARTINA G.
Having made and considered the seven statutory findings enumerated above, having found as proven by clear and convincing evidence that at least one statutory ground for termination was proven against Martina G. with respect to each of the seven CT Page 9562 subject children, and having further found as proven by clear and convincing evidence that it is in the best interests of each of the seven children that Martina G.'s parental rights be terminated, it is hereby ORDERED that the parental rights of Martina G. with respect to Ryshima G., Solomon R. Jr., Yetta R., Roshawn R., Toman R., Marquise G. and Johnae G. be and hereby are, terminated.
 ORDERS
By virtue of the findings and judgments entered herein, the minor children Ryshima G., Roshawn R., Toman R. and Marquise G. have each been freed for adoption. The court hereby appoints the Commissioner of the Department of Children and Families as the statutory parent of each child for the purposes of securing an adoptive home, or other appropriate permanent placement, for them. Said commissioner shall file with the court, within 90 days of the date of this judgment, a written report concerning the progress made towards such permanent placements.
Because the biological father's parental rights have not been terminated with respect to the minor children Solomon R., Jr. Yetta R. and Johnae G., these children are not freed for adoption and remain under existing orders of commitment to DCF.[6] The court orders that the petitioner and the respondent confer and agree upon reasonable written expectations, which shall include visitation with these children, and the steps necessary to achieve possible reunification with them. To that end, the respondent father, his counsel, counsel for the minor children, the petitioner's counsel and a representative from DCF are ordered to attend a case conference at the Child Protection Session, 1 Court Street, Middletown, Conn., on August 28, 1997 at 11:00 a.m. At said conference the parties shall meet and attempt to resolve issues concerning expectations, and visitation. All agreements shall be filed with the court on that date for its approval. Any issues which cannot be resolved at the case conference shall be addressed at a hearing of the court immediately following said conference. Counsel for the various parties are urged to confer informally prior to the date of the case conference in an effort to identify and resolve the issues as referred to herein.
Dated at Middletown, Connecticut this 24th day of July, 1997.
BY THE COURT: CT Page 9563
DYER, J.