MEMORANDUM OF DECISION
By applications dated January 13, 1998, Kimberly B. filed for termination of the parental rights of Anthony M., Jr. to their four children in the probate court having jurisdiction over the parties. On December 1, 1998, after hearing, the court found that CT Page 9134 the petitioner had not proven her case by clear and convincing evidence and denied the applications.
The denials were timely appealed pursuant to the statutes to the Superior Court for Juvenile Matters. Because probate courts are not courts of record, the appeals present a trial de novo of the issues regarding termination of the father's parental rights.[2] Trial on the applications in the Child Protection Session of the Superior Court for Juvenile Matters took place on June 21, 1999. For the reasons set forth below, the court concludes that the petitioner has met her burden and terminates the rights of Anthony M., Jr. to his four children, Joseph, Stephanie, Jonathan and Sarah M.
 1. FACTS
From the evidence, the court makes the following findings:
Kimberly B. and Anthony M., Jr. were married on August 24, 1985 and have four children: Joseph, now fourteen; Stephanie, now twelve; and Jonathan and Sarah, twins who will be ten years old on August 30, 1999. The parents separated in 1991 and their marriage was dissolved on June 19, 1993. The dissolution judgment did not provide Anthony with any visitation. He did not participate in the process and did not seek court orders concerning visitation until 1997.
The court concludes from the evidence that Kimberly B. left the relationship in June, 1991 and went to live with her brother with all four children. During the course of the marriage, Anthony M. physically abused his two older children from a previous relationship. This abuse occurred at times in front of Kimberly and her two oldest children. There was also domestic violence between the parents in the home, with Anthony physically restraining Kimberly. The court credits the testimony that Anthony would discipline Joseph by squeezing his hand until the child cried and was hurt. The family problems caused Joseph, then age six, to have frequent nightmares and to wet the bed. The other children were shy and timid, and clung to their mother whenever their father was around.
In the month following the separation, Anthony visited his children twice. He testified that his wife asked him not to come again until he could stop crying in front of the children, because it upset the children. Some short period of time CT Page 9135 thereafter, Anthony was hospitalized for his mental difficulties as well as physical problems with his heart. His oldest son from another relationship testified that his father had a "nervous breakdown three weeks after she left and was in a private hospital for ten days." The combination of Mr. M.'s mental and physical difficulties resulted in his receipt of social security disability income starting in 1995. The social security income application on his behalf demonstrated that he suffers from bi-polar disease and from an adjustment disorder with mixed emotional features.[3]
In the four years following 1991, Anthony M. had no contact with his children. He did not send letters, cards or gifts. He did not contact them on birthdays or other important holidays. Through inaction, he relinquished whatever parenting relationship he had with his four children. His own testimony does nothing to explain the extraordinary length of time which lapsed before he attempted to initiate any contact. While it may be that Kimberly B. asked him not to visit again until his and the children's psychological states were improved, her request does not excuse his own inaction and lethargy with regard to his children.
He and his present wife testified that they sent letters starting in 1995 to Kimberly requesting contact. They were unable to provide any copies of these letters. All parties acknowledge that a card was sent to Joseph in 1995, whose response was to wonder why his father was interested in him after all this time.
In 1995, Kimberly married again and the four children grew close to their stepfather, Roger, whom they had known for a period of time. Kimberly, because of the lack of visits and her new situation, spoke to Anthony about a voluntary termination of his parental rights at that time, he refused. Thereafter, in 1997, some six years after Kimberly and the children left his household, he filed a motion for reduction of child support and visitation. This motion was referred to the Family Services Division of the Superior Court for mediation. In the fall of that year, Anthony sent letters to each of his four children. The unexpected contact, the references to past events and knowledge of the children's present circumstances upset them. Each of the letters, which became exhibits at trial[4], contained a digitalized picture of the child to whom it is addressed. The pictures are school pictures, obtained by their father from their school. The letters to Joseph and Stephanie are similar and make reference to the past and state "As bad as the past was I am CT Page 9136 working on the future and changing my ways." They also speak about Anthony's making a promise to leave the children alone and what a mistake that promise was. The letters to Jonathan and Sarah mention seeing the children during a scouting event including a Fire Department equipment demonstration. In Sarah's letter, he states "You and Jon were always my favorite children and still are." This statement further upset the two oldest children.
Anthony testified at trial that he was able to write the letters on a library computer. He also testified that he saw the twins at the scouting event and did not recognize them, but did recognize their mother. He acknowledged that in the past he had a bad temper and had come to see that perhaps he was not a good dad to his children, although he thought he was at the time. He did not explain the letters' reference to the promise he had made not to see the children. He did speak about his regret at not knowing his children. He testified that he misses them.
The social worker from the Department of Children and Families, hereafter "DCF", testified that he completed a study in connection with the termination applications. He found that the children did not have a relationship with their father. "They had not seen each other for a number of years. The two younger ones do not remember him and the two older ones remember him negatively." In his report, he stated that "the two older children were clear that they wanted nothing to do with Mr. M. and viewed only Mr. B. as their father."[5] He supported termination as being in the best interests of the children.
By agreement of all counsel and based upon pre-approved questions, the court met in chambers with the four children together with a court reporter. Counsel and the parties were not present. The agree-upon questions were asked and the children's responses were transcribed. The in-chambers interview unequivocally supports the findings of the DCF social worker and the testimony concerning the children's position and their desire to remain with their mother and to be adopted by their step-father.
 2. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 45a-717(h): CT Page 9137
1) The timeliness, nature and extent of services offered, provided and made available to the parents and the children by a child-placing agency to facilitate the reunion of the children with the parent.
This section does not apply to the circumstances of this case.
2) The terms of any applicable court orders entered into and agreed upon by any individual or child-placing agency and the parent and the extent of fulfillment of those obligations by the parent. There were no such orders in this case.
3) The feelings and emotional ties of the child with respect to the child's parent, any guardian of the child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties. The four children no longer know their father. There has been no visitation with him since 1991. They reside with their mother and have become attached to their step-father, whom they now view as occupying the parental role. The two older children express some negative memories of their father. The two younger ones do not know him as they were toddlers when they last saw him. None expresses any interest in coming to know their biological father. Their step-father would like to adopt them, should they be freed for adoption.
4) Finding regarding the ages of the children. Joseph is fourteen, Stephanie twelve and the twins, Jonathan and Sarah, will be ten years old on August 30, 1999.
5) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parent has maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the children. The court finds, from the clear and convincing evidence, that Anthony M. has failed to maintain contact with his children and had relinquished any role he ever had in their lives. His explanation of the reasons for this are not credible to the court and the court also concludes, from the clear and convincing evidence, that it is not in the best interests of the CT Page 9138 children to return them to his home as he has done nothing to parent them.
6) Finding regarding the extent to which a parent has been prevented from maintaining a reasonable relationship with the children by the unreasonable act or conduct of the other parent of the children, or the unreasonable act of any other person or by the economic circumstances of the parent.
This is the gravamen of the father's defense to the termination action. He believes that Kimberly has prevented him from having a relationship with his children. First, the court notes that the families in question reside in geographical proximity to each other and that finances did not inhibit contact. Second, the court finds that Anthony M. did nothing to seek visitation or to maintain his ties with his children for many years. While it is understandable that their mother would not welcome such contact, the court finds that her conduct was not unreasonable under the circumstances. The court finds, from the clear and convincing evidence, that she did not prevent him from having contact with his children. It is his failure to act within a reasonable time which caused his relationship with them to end.
 3. ADJUDICATION
The termination applications claim that Anthony M. had abandoned the children in the sense that he had failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. The second ground alleged is that the children have been denied, by reason of an act of parental commission or omission, the care, guidance or control necessary for their physical, educational, or emotional well-being. The last allegation is that there is no ongoing parent-child relationship, which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the children, and to allow further time for the establishment or reestablishment of the relationship would be detrimental to the best interests of the children. Connecticut General Statutes § 45a-717(g)(2)(A), (B), and (C).
The court finds, by clear and convincing evidence, that as of January 13, 1998, Anthony M., Jr. had abandoned these children. CT Page 9139 "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal (Docket No. 9489),183 Conn. 11, 14, 438 A.2d 801 (1981). He has not been involved with these children for years and did not take any steps to maintain such contact as was available to him. It has been eight years since there has been direct contact between them. The court concludes that Anthony M. did not take the actions necessary to be in touch with them and to care for them as his children. He neither sent gifts, paid support nor called to speak with them for three years until 1995. Between 1995 and November 1997, he also did not have any further contact. When he did send letters, they were inappropriate from the point of view of children whose biological father had not spoken to or interacted with them for most of their lives. The letters were written from his perspective only, with no understanding of or appreciation for the impact they might have on his children. The facts supporting abandonment had also been in existence for over a year when the applications were filed.
The applications further claim that the children have been denied, by reason of an act of parental commission or omission, the care, guidance or control necessary for their physical, educational, or emotional well-being. Our courts have held that: "There is nothing in this clear statutory language that limits the acts of commission or omission to the serious physical injury of a child, rather than the serious emotional injury to a child. . . . The language does not limit the grounds to acts resulting in physical injury." In re Sean H., 24 Conn. App. 135,144, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078
(1991). In re Kelly S., 29 Conn. App. 600, 614, 616 A.2d 1161
(1992). The court cannot find, from the evidence, that Anthony M. inflicted serious physical injury on his children. The evidence of physical abuse related only to Joseph and then only to the hand squeezing. While the pain caused by Anthony M.'s actions still remains with Joseph to this day, they did not inflict a serious physical injury on this child. There is no evidence of any physical injuries to the other children.
The issue of serious emotional injury is more difficult. The children have suffered some emotional difficulties because they have a biological father who did not pursue a connection with them and who has remained a stranger to them. Nonetheless, the court cannot conclude that this is a serious emotional injury, CT Page 9140 from the evidence presented. It is unfortunate and most parents hope that their children will not need suffer from emotional losses and disruptions, as these children have suffered. While the court does not intend to minimize the impact of Mr. M.'s neglect of his children, the court cannot find that it meets the requirements of the statute and dismisses this count of the applications.
The last ground the applications allege is that there is no ongoing parent-child relationship between these children and their biological father and that to allow further time is not in the best interests of these children. The court so finds from the clear and convincing evidence. This father has not made any reasonable realistic attempts to maintain his relationship and whatever relationship there was is now ended. Given the children's present circumstances, their expressed wishes and the length of time he has been out of their lives, the court finds, from the clear and convincing evidence, that it is not in their best interests to permit further time for the re-establishment of any relationship. The court finds, from the evidence, that the facts supporting the court's finding were in existence for a period greater than one year prior to the filing of the termination applications.
 4. DISPOSITION
Once the court finds that the allegations of the termination applications have been proven by clear and convincing evidence, the court in the second or dispositional phase of the proceedings must also find that termination is in the children's best interests. In re Roshawn R., 51 Conn. App. 44, 52, 720 A.2d 1112
(1998). In accordance with the findings made above, the court does conclude, from the clear and convincing evidence, that termination is in the best interests of these children. There is no relationship remaining with their biological father. They have formed a new family and believe that they have a father who cares for them. Their stepfather is emotionally close to them and wishes to adopt them. Each of these children will recall that their biological father is an individual different from their step-father and may, as each becomes an adult, seek to know who he is. However, at the present time, the court concludes that their best interests, in terms of their family and their need to feel permanence, are best met by terminating Anthony M., Jr.'s parental rights to them, and it is so ordered. CT Page 9141
The court hereby confirms that Kimberly B. is the sole and remaining guardian of Joseph, Stephanie, Jonathan and Sarah M. Pursuant to Connecticut General Statutes § 45a-717(j), the court directs that she file a report with the court within ninety days concerning a plan for these children and further reports as may be required by law. It is the court's expectation that Kimberly will file an adoption application with the Probate Court, naming Roger B. as the adoptive parent.
Barbara M. Quinn, Judge Child Protection Session
[2] Connecticut General Statutes § 45a-186 et. seq.
[3] Petitioner's Exhibit 10, Request to Admit and attachments.
[4] Petitioner's Exhibits 5, 6, 7, 8.
[5] Petitioner's Exhibit 1, Study for Probate Court Termination of Parental Rights.